## J. W. DILLON v. KAUFFMAN & RUNGE.

### (Case No. 1551.)

1. SUBROGATION.— One who is induced to pay a debt secured by deed of trust, for the benefit of copartners who owed it, under circumstances showing that it was intended that he should be entitled to the benefit of the security afforded by the trust deed, will be subrogated to the rights of the original creditor before payment, and to the security; nor is this right of subrogation affected by the fact that the trustee named in the trust deed executed a release to the original debtor at the time of payment.

2. SAME.— Neither was subrogation to the rights of the original creditor affected by the fact that a new note and a new deed of trust, embracing additional property, were executed after payment, by one partner only, to him who advanced the money. The lien on the property liable for the original debt reaches back to the date of the original deed of trust, and remains through every change in the character of the security, until the money advanced to satisfy the original debt is repaid, or the claim on the mortgaged property for its repayment is released.

3. SUBROGATION —HOMESTEAD.— The homestead right, acquired after the execution of a deed of trust, but before the making of a new one, on the same property, to secure to a third party the repayment to him of money advanced to satisfy the lien, derives no protection from the constitution, but is subordinate to the subrogated lien of such third party. As against the rights of the subrogated lien holder, the wife of the debtor, claiming exemption from sale of a homestead, first designated as such after the original trust deed on the property was given, cannot be heard to complain of any disposition of the property made by agreement between the debtor and subrogated creditor.

4. CASES FOLLOWED.— Shepperd *v.* White, 16 Tex., 163, and Clements *v.* Lacy, 51 Tex., 150, followed.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit by Kauffman & Runge on two notes executed by defendant, one for $6,000, with foreclosure asked of a deed of trust executed by defendant on a lot and house in the town of Kosse. The deed of trust also embraced a stock of merchandise and land in Montgomery county. Plaintiffs admitted sale of Montgomery land, and allowed a credit on the note for proceeds.

Defendant alleged by amended original answer that besides the proceeds of the Montgomery land, the proceeds of the stock of goods set out in the trust deed should be applied to balance due on the note, and that the surplus should go as a credit on the other notes; that plaintiffs bought those goods of defendant for $4,000. That the other property, the house and lot in Kosse, was the homestead of defendant's family, and was at the date of the execution of the trust deed last executed.

By supplemental petition they admitted the purchase of the stock of goods, but alleged that by agreement the proceeds of the stock, when resold by plaintiffs, was what defendant was to receive, and that by agreement of the parties this was to be credited on an open account debt of defendant to plaintiffs; that $2,959 was the proceeds, and same had to be applied as credit on the account.

They further alleged that on March 1, 1879, defendant and one Hall, composing the firm of Dillon & Hall, gave the firm of Marx & Kempner a note for $6,000, due January 1, 1880, and deed of trust on same property described in the deed of trust sued on; that on January 5, 1880, at the instance of defendant, plaintiffs advanced and paid the note and interest thereon to Marx & Kempner, and received from them the note indorsed, together with the deed of trust on the brick hotel, restaurant and saloon building, the house and lot in town of Kosse having been conveyed to J. W. Dillon on dissolution of the firm of Dillon & Hall; that plaintiffs, without releasing the note and deed of trust transferred to them by Marx & Kempner, received and accepted from said Dillon on the 7th day of January, 1880, as the primary evidence of the debt and security therefor, the note and deed of trust sued on, and that at the time of the execution of the note to Marx & Kempner the building and lot in Kosse was not the homestead of defendant, but was subject to the deed of trust of Dillon & Hall to secure the same; that they were equitably entitled to be subrogated to all the rights of Marx & Kempner under the note and deed of trust, as well as all the rights and titles acquired by plaintiffs by the indorsement and transfer thereof.

The case was tried by the court without a jury. The judgment of

the court was in effect to subject the property claimed as homestead to the deed of trust, and to hold that the stock of goods, also embraced in the trust deed, had been properly appropriated to the open account debt. Defendants excepted and gave notice of appeal.

The facts as stated in the petition were supported by the evidence. The " conclusions of fact " found by the court cover many pages, and cannot be inserted. That which is important to the proper understanding of the case is nearly all stated in the " conclusions of law " filed by the district judge, which will be given. In addition thereto it should be stated that about the 15th of December, 1879, Dillon sold the homestead which he then owned and lived in, with his wife and several minor children, in the town of Kosse, in Limestone county, Texas, and made a deed to the same to one Johnson about the 1st or 2d of January, 1880; and he, with his wife and children, about the 15th of December, 1879, moved upon and occupied the lot and a half in Kosse, with the two-story brick hotel and other buildings thereon situated, being the same lot and a half and brick buildings and improvements specified in the deed of trust of March 1, 1879, given by Dillon & Hall to secure the $6,000 note of Dillon & Hall to Marx & Kempner. Dillon, with his wife and minor children, had continuously, since the 15th of December, 1879, resided thereon to the time of trial, none of them having since had any other homestead; and this lot and a half and improvements on the 15th of December, 1879, was of the value of $2,500.·

On the 2d of February, 1880, the defendant Dillon wrote to Kauffman & Runge to " send him a release as far as Mr. E. Hall is concerned in the note of $6,000, executed to Marx & Kempner, so that he (Dillon) can have his deeds perfected by him in dissolution of the firm of Dillon & Hall."

On the 16th of January, 1880, Dillon wrote to Kauffman & Runge the following letter:

"KOSSE, January 16, 1880.

"Messrs. KAUFFMAN & RUNGE, Galveston:

"*Dear Sirs* — I have written to Marx & Kempner to turn over to you a release to Mr. E. Hall when they turn the deed of trust note, etc. The note for $6,000 was given by Dillon & Hall and secured by deed of trust on land in Montgomery county which belonged to me, and brick buildings in Kosse, the property of Dillon & Hall. Now, in the dissolution the Kosse property was taken by myself, and to get the deeds from Dillon & Hall to J. W. Dillon I will be compelled to surrender him back the note or get a release for him, and then I will execute a new note and deed of trust to K.

& R., or any way that your attorneys say. If acceptances are returned promptly, the F. B. & T. Co. will be able to pay $1,000 this month on their notes, as orders are coming in rapidly.

"Yours truly,                    J. W. Dillon."

On the 20th of January, 1880, a release was executed by the trustees, Davis & Sayles, to Dillon & Hall, to the property or deed of of trust executed by Dillon & Hall to secure the $6,000 note due Marx & Kempner, which deed of release was recorded in Limestone county some time in February, 1880.

On the 7th of February, 1880, J. W. Dillon executed to Kauffman & Runge his promissory note for $6,000, bearing ten per cent. per annum interest from date, payable to Kauffman & Runge on or before the 1st of January, 1881, and secured by deed of trust executed by Dillon at same time on the same property as was specified in the deed of trust of Dillon & Hall to secure the Marx & Kempner $6,000 note, and that the trust deed of February 7, 1880, was filed for record in Limestone county on the 11th of February, 1880, and recorded on the 14th of February, 1880.

On the 28th of September, 1880, Dillon failed in business, and at that time was indebted to Kauffman & Runge, on open account, $11,316.

The following are the conclusions of law filed by the judge below who tried the case:

"The conclusions of law drawn by me from the foregoing facts are:

"1. The plaintiffs are entitled to a recovery on the $2,529 note sued on the sum of $1,429, with interest thereon of $260.39, making principal and interest thereon $1,689.39, and that the lien on the property given to secure the payment of the same should be foreclosed on that part of the property specified in the decree as subject to the payment of said $1,689.39.

"2. That the plaintiffs are further entitled to recover on the $6,000 note sued on the sum of $3,210.25, being the balance of the note and interest due to date of judgment, the credit of 24th of March, 1882, for $3,318.25, and the credit of $450, balance of salary, and of $300 insurance money, having been allowed by the court to the defendant, leaving said balance of $3,210.25 due to plaintiff from defendant on the $6,000 note sued on, for which balance judgment is also rendered in favor of plaintiffs, and the same adjudged a lien on that part of the property specified in the decree as subject thereto, and the lien thereon foreclosed, the judge holding that, although on the 7th of February, 1880, the date of the

note and trust deed, the plaintiff with his wife and children were residing in the brick buildings on said lot and a half mentioned in the trust deed, yet that under the facts the plaintiffs are subrogated to the lien on the same which Dillon & Hall had given to Marx & Kempner on the 1st of March, 1879, when Dillon did not reside on the property and then had homestead elsewhere. The purpose and object and intent of the release of the Marx & Kempner deed of trust was to enable Dillon to settle his partnership affairs with his late partner Hall, and not in any manner intended to change either the amount of the Marx & Kempner note or the property given to secure its payment. The new note executed to Kauffman & Runge was for precisely the same amount of the Marx & Kempner note, and bore the same interest and was secured by the identical property. Although the release of the Marx & Kempner trust deed is dated some days prior to the Kauffman & Runge trust deed, yet the release was made under promise of defendant to plaintiffs that he would execute new note and trust deed, or do anything that plaintiffs' attorneys might think best, for the purpose of enabling defendant to get the title out of his former partner, Hall, and carrying out his agreement with Hall at the time of their dissolution of the partnership of Dillon & Hall. Equity, as between the parties, there being no intervening *bona fide* purchasers or intervening incumbrances, will protect the vendor's lien although the vendor's deed be absolute on its face, and the same principle of equity will subrogate the junior lien to the original lien as between the parties, where there is no new consideration for the junior lien, but where the junior lien was given for the personal convenience of the mortgagor in place of the former subsisting lien, especially where the purposes and object and intent of the parties thereto is shown by written evidence, as in this case by the letters aforesaid of Dillon to plaintiffs. . . . I hold under the facts that the plaintiffs are subrogated to their original lien acquired by them under the said Marx & Kempner trust deed, and that defendant's homestead claim cannot override the Marx & Kempner lien created long anterior to the homestead claim of defendant, and that the plaintiffs are entitled to have their lien foreclosed as ordered in the decree.

"The foregoing are my conclusions of law given without the time to extend the reasons or make reference to the authorities, by reason of the press of other official duties.

                   "WM. H. STEWART,
"Judge of Twenty-sixth Judicial District of Texas."

There were twenty-four assignments of error, which need not be

given; such of them as are referred to in the opinion will be found in appellant's propositions of law, with which they are identical in language. Other matters not stated here will be sufficiently indicated by the opinion; and the facts on which is based the complaint made by appellant of misappropriation of assets, will be shown by his statement in the fifth proposition of his brief.

*Herring & Kelley* and *Mann & Baker*, for appellant.

I. The court erred in its conclusions of law in that it held that the plaintiffs had the right to foreclose in this suit and sell under trust mortgage, given for loan of money, property, the home of defendant, his wife and minor children, at and before the defendant executed the trust mortgage, and continuously since used by the defendant's family as their homestead, and which at the time it was acquired and still is only of the value of $2,500, and situated in a town; and when, from before the execution of the trust deed and note, defendant and his family have no other home.

II. The court erred as to matter of law in that it, in effect, held that where a deed of trust is given on a homestead, and on personal property of value greater in amount than the value of the homestead, that after the maker of the lien becomes insolvent, the creditor, of his own will, or even with consent of the debtor, can, as against the homestead rights of the debtor's family, change the application of proceeds as against the terms of the contract of the trust deed, and relieve personal property from the lien, in order to retain or rather make a lien on homestead. Story's Eq., vol. 1, sec. 633, title "Marshaling of Securities."

III. The court erred as to matter of law in not finding that the deed of trust sought to be foreclosed had been fully satisfied, as far as any right of foreclosure was concerned, against the homestead.

IV. The court erred in allowing plaintiffs' equitable relief of foreclosure of liens without requiring them to do equity by restoring to the trust deed transaction the proceeds of property belonging to that fund by express designation of terms of trust deed, and by rights of Dillon's family in the homestead, by which they are entitled to have the trust deed property so marshaled and applied to the lien as to release the homestead in preference to releasing other property embraced in the trust deed. Story's Eq., title "Marshaling of Assets;" Ayres *v.* Cayce, 10 Tex., 108; Thompson on Homestead and Exemptions, sec. 358; Dun *v.* Buckley, Supreme Court of Wisconsin, November 21, 1882, given in full in Central Law Journal, vol. 16, No. 2, January 12, 1883.

V. The court erred in holding that Kauffman & Runge had properly applied proceeds of payments of $5,000 realized by them on the notes of Fire Brick & Tile Company which Dillon placed with Kauffman & Runge when he opened account with them in January, 1880, as Kauffman & Runge put the whole of this $5,000 as a credit on open account, when as late as July 17, 1881, they wrote Dillon, in response to his letter · asking as to the collaterals held by them, that, " Besides the statement sent you giving balance of your open account, we hold your

| | | |
|---|---:|---:|
| Note for....................................................... | | $6,000 00 |
| Interest from January 1, 1880, to July 1, 1880....................... | | 840 00 |
| | | $6,840 00 |

Against the whole of which go the

| | | |
|---|---:|---:|
| Notes of F. B. & T. Co................................... | $5,000 00 | |
| Interest from January 1, 1880, to July 1, 1881............. | 750 00 | |
| | | $5,750 00 |
| Note of F. B. & T. Co........................·............ | $2,393 08 | |
| Interest from September 27, 1880, to July 1, 1881.......... | 144 64 | |
| | | 2,537 72 |
| | | $9,287 72 " |

Now the expression "against the whole of which go the notes of F. B. & T. Co." is an express appropriation either to the $6,000 note and interest, or to this note and open account, as a whole of proceeds of F. B. & T. Co.'s notes,' on which was realized $5,000.

If the expression, "the whole of which," refers solely to the $6,000 note (which we claim), it is a written agreement so to apply proceeds. If that expression refers back to the account sent in former letters as well as the note, then the note and account were each to get their *pro rata* of the proceeds on application of the proceeds to the debts. And either way the court erred, in that no part · of the proceeds went as a credit on the $6,000 note, under which court gives foreclosure against homestead.

VI. There was error by the court in treating the transaction of payment of the Dillon & Hall note as a purchase (a mixed error of law and fact), and this runs through and underlies the whole of the court's findings as to subrogation of Kauffman & Runge to lien rights under the Dillon & Hall notes and lien. From the then standpoint of the parties there was no object of preserving any lien rights by subrogation to the Marx & Kempner trust deed, and it was not so contemplated or intended. Dillon considered himself, and was thought by Kauffman & Runge, more than solvent. He

was opening an account with them with a deposit of $5,000 of good collaterals. His then wants, not large, only $1,800 of purchases, were made in January from Kauffman & Runge. The deed of trust which Kauffman & Runge took on his homestead embraced other property, that, even under forced sale, has brought more than the $6,000. The note they took gave only eleven months' time on the loan, and bore such interest as is usual on well secured paper. There is no intimation in pleadings or evidence that Kauffman & Runge were not fully advised that part of the property was at the time Dillon's homestead. It was only after Dillon's failure, and from that standpoint looking back over the transaction, that any question of subrogation as against the homestead was ever contemplated.

VII. The court erred in finding its legal conclusions on facts that Kauffman & Runge purchased the Dillon & Hall note from Marx & Kempner, as the legal effect of the transaction was a payment by Kauffman & Runge for Dillon. Daniel on Neg. Inst., vol. 2, secs. 1222, 1223; Gaylord v. Loughridge, 50 Tex., 578; Flanagan v. Cushman, 48 Tex., 246; Malone v. Kauffman, 38 Tex., 457; Perkins v. Stern, 23 Tex., 561; Duty v. Graham, 12 Tex., 427.

. . . XII. The court erred in holding that in a suit by Kauffman & Runge v. J. W. Dillon, on his individual note, there could be a foreclosure by doctrine of subrogation under the Dillon & Hall trust deed on a note of Dillon & Hall, on which the lien is but an incident to expressed evidence of the firm debt, when this suit was not brought on the Dillon & Hall note, and Hall is not a party to the suit. Plaintiffs took note of one partner, after paying for him a note of the firm after the firm had dissolved; and knowing that he had assumed the firm debt, they sue on the note of the individual partner, and take a decree of foreclosure of trust deed given by firm to secure the firm note. If the plaintiffs cannot sue Dillon & Hall on the firm note the lien is released, and if they still have a right to sue on the firm note they have not done it. Taylor v. Loughridge, 50 Tex., 578; Flanagan v. Cushman, 48 Tex., 246; Malone v. Kauffman, 38 Tex., 457.

*Robert G. Street,* for appellees.

I. Subrogation arises out of the facts of the transaction and "rests on principles of equity wholly independent of contract;" it is the continuation or preservation of the original lien in favor of another who has become equitably entitled to its protection; it arises *eo instante* with the transaction from which it flows, and which, but for this right of subrogation, would itself have operated the extin-

guishment of the original lien; it precludes the idea " that there ever has been an instant of time when the property was unincumbered;" and to claim, therefore, that the right of subrogation is cut off by any other right which was itself subject to the original lien — as the homestead claims of the defendant in this case to the Marx & Kempner deed of trust — is simply to state a contradiction in logic. Flanagan v. Cushman, 48 Tex., 246; Kauffman v. Malone, opinion by Judge A. S. Walker, Commissioner of Appeals, Galveston, 1880; Hicks v. Morris, Tyler Term, 1882; Gilbert v. Gilbert, 39 Iowa, 637; Matthews v. Aiken, 1 Com., 246, 595; Hays v. Wood, 4 Johns. Ch., 370.

II. An "intervening equity," to which the right of subrogation in the enforcement of a lien will be subordinated, is some right or claim against which it would be inequitable to enforce the subrogation because of something done or suffered about the original lien (as the execution and recording of a release), upon the faith of which such right or equity has subsequently arisen; and, in such case, the party claiming under such lien, by operation of the doctrine of equitable estoppel, will not be heard to deny that the "intervening equity" is paramount thereto; and "when money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancers whom he has thus satisfied," and the fraud that caused the defect in the second mortgage, as taking possession of the property as homestead without the knowledge of the lender on the eve of the execution of such second mortgage, will not be regarded as an "intervening equity." Clements v. Lacy, 51 Tex., 160; Gillum v. Collier, 53 Tex., 599; Jones on Mortgages, sec. 927; Mitchell v. Burt, 45 Ga.; Latham v. Staples, 23 Ga.; Cordova v. Hood, 17 Wall., 1; Lusk v. Hopper, 3 Bush, 179; Homer's Ex'rs v. Bakewell et al., 46 Ala., 464.

III. The taking up of the mortgage note and the substitution of another is not a discharge of the original debt either as between the parties or as to a subsequent purchaser. Jones on Mortgages, sec. 927.

. . . VI. When a mortgage is discharged and a new one taken as part of the transaction, the seizin between the release and the new mortgage is but momentary, and will not admit of any right or interest of the mortgagor under the homestead act to intervene, nor would such seizin give his wife the right of dower. Jones on Mortgages, sec. 927; Burns v. Thayer, 101 Mass., 426; Dillon v. Byrne, 5 Cal., 455; Swift v. Cramer, 13 Cal., 526.

WILLIE, CHIEF JUSTICE.— The claim of Kauffman & Runge to be subrogated to the lien of Marx & Kempner upon the property of Dillon is a just and proper one. Dillon having dissolved partnership with Hall, was anxious to have him released from liability upon the firm note for $6,000, and to substitute his individual note in the place of it. He had agreed with his partner in their final settlement that Hall should convey to him his half interest in the Kosse property, and Hall would not carry out this agreement until he was freed from liability on the firm note. Dillon also wished to continue business for himself, and to that end to establish a line of credit with Kauffman & Runge, who it seems were willing to extend it to him upon his placing collaterals with them to secure future indebtedness. As a part of this arrangement Kauffman & Runge took up the $6,000 note, Marx & Kempner transferring it to them by indorsement without recourse, and delivering to them also the deed of trust given to secure it. Then followed the execution of a new note signed by Dillon alone, made payable to Kauffman & Runge, for the same amount and bearing the same rate of interest as the firm note, and the execution also of a new deed of trust upon precisely the same property that was included in the old one, which was released about the same time by the trustees named in it.

The only reason urged by appellant why this should not amount to a subrogation of Kauffman & Runge to Marx & Kempner's rights as mortgagees is that they were mere volunteers, officiously intermeddling in the matter, and having no interest in the payment of the debt and the extinction of the original lien or its transfer to them. Admitting that they were not under obligation for the payment of the debt, and that they had no interest in the incumbered property to be protected by purchasing in Marx & Kempner's security, and that they paid their money for the $6,000 note voluntarily, still the evidence shows conclusively that the payment and discharge of the old note and mortgage and the execution of the subsequent instruments were the result of an arrangement to that effect between all the parties to the transaction.

It clearly appears that it was their understanding that Kauffman & Runge should become entitled to the security or its substitute, and the arrangements made between them were intended to have precisely the effect which appellees claim should be given them. It was a conventional subrogation, and it would be a fraud upon the appellees if Dillon could now insist that the security was discharged by the payment and release of the note and mortgage.

The substitution of one note for another, or the cancellation of

the former mortgage and supplying its place with a new one, does not affect the subrogation, but the claim may be enforced against the property incumbered by the original lien, no matter what changes may have occurred in the form of the instruments.

Taking additional personal security, or the individual note of one of the original signers, or embracing additional property in the deed of trust, does not affect the lien upon such property as was originally included in the security. As the lien of the subrogated party reaches back to the date of the original mortgage, and holds its grasp upon the incumbered property from that time continuously through the various changes in the character of the securities till the debt is fully satisfied or effectually released, it follows that no intervening equity of third parties can affect it, but they must all yield to its superior claim.

Even the homestead right which may accrue in the incumbered property can receive no more protection against this subrogated lien than against any one of the same kind which is allowed to prevail over it when no subrogation has taken place. These doctrines have been so frequently established in the courts of the country, including those of our own state, that it is useless further to discuss them. The only case in which the contrary was held, after having been frequently attacked, was finally overruled in the case of Hicks v. Morris, lately decided at Tyler.

In the present case one piece of property covered by the deed of trust became the homestead of Dillon and family a few weeks before the subrogation took place. So far as the deed of trust of Kauffman & Runge is concerned, no homestead right was acquired in these premises, and, like any supervening equity or incumbrance, it cannot prevail against the subrogated lien of Kauffman & Runge, and was subject to be sold for the satisfaction in the same manner as if no appropriation of it as a homestead had ever taken place.

This leads us to the consideration of the only other point of any importance upon which a reversal of the judgment is sought, viz., the alleged error of the court in allowing an appropriation of the money realized from sale of the goods embraced in the deed of trust to a debt due by Dillon to Kauffman & Runge on open account.

The evidence is very clear that this took place by consent of Dillon. There can be no doubt but that the lien creditor may agree with his debtor that any one article of property included in the lien may be discharged from the lien; that it may be sold and the proceeds applied to any purpose agreed upon between the

parties. This is, of course, subject to the rights of sureties, incumbrancers or other parties interested in the debt or the property to have their interests protected.

It is claimed that the wife's homestead right having attached to the premises, subject to the payment of the lien upon them, creates such an interest in them that she can compel a sale of the remaining incumbered property to pay off the mortgage debt before the homestead property can be touched for that purpose; that as a consequence, when the goods were sold, her homestead rights demanded that their proceeds should have gone towards the satisfaction of the mortgage and not to the open account; that judgment should have been enforced only for the balance of the debt after deducting the net proceeds of the sale, as well as those of the sale of the Montgomery lands which were deducted by the court.

We do not think this position tenable. The premises as to Kauffman & Runge's lien were not a homestead, and were not to be treated as such in enforcing that lien. They stood upon no higher footing than any other lots bound by a deed of trust. Whilst as between Dillon and his wife and other parties, the constitution protected them from forced sale, from mortgage, or from sale without consent of the wife, that instrument did not shield them from sale, conveyance, or other disposition for the purpose of satisfying a lien fastened upon them before becoming the home of the family. As to such, they possess no greater dignity than they had when the lien first attached. In reference to such incumbrances, the husband has been held by this court authorized to make what arrangements he may choose, or even to renounce lands thus burthe ned, or to sell them, without any question on the part of his wife. Shepperd v. White, 16 Tex., 163; Clements v. Lacy, 51 Tex., 150.

The principles thus decided not only tend to show how utterly powerless the homestead right is when thus incumbered, as against the lien holder, but they show the authority held by Dillon in this case to make the arrangement he did as to the sale and appropriation of the goods. As there was no law to prevent him from making such disposition of the money had the lots never become the homestead of Dillon's family, there was none that could prevent him from so doing in reference to a lien against which Dillon had no homestead right in the property. We are referred to a case from Wisconsin.

That case is essentially different from the present. There the personalty sold was the primary security, and the homestead merely collateral to it, and hence there might be some reason why its pro-

ceeds should first be sold to satisfy the lien. The effect of the arrangement between the parties was, that this personal property should be first exhausted before its collateral, the homestead, should be encroached upon. This placed the wife, in her claim upon the homestead, somewhat in the position of a surety, and upon that analogy the case was decided. Again, it was a case where the homestead right had attached long prior to the mortgage. The wife had joined in incumbering it for the debts of her husband. She was in fact a surety for him to the extent of putting up a sufficient interest in her homestead to satisfy $1,000 of his indebtedness. Her rights were *strictissimi juris*. Here she has no right whatever against the creditor more than she would have as to any other community property of herself and husband which had been mortgaged by him.

We think there is nothing in the manner in which the proceeds of the goods were appropriated, nor in the subrogation allowed by the court, that will vitiate the judgment, and it is affirmed.

AFFIRMED.