No. 5800.

A. STOTT *v*. THOMAS A. SCOTT.

1. LIEN OF LIVERY STABLE PROPRIETOR.—The Statute (Rev. Stats., art. 3183) which confers a lien in favor of proprietors of livery stables upon all animals placed with them for feed, care and attention, has no application when the animal is placed in the stable by one not the owner, and whose possession of the animal, or whose agency to control the same, is unauthorized.

2. CASES APPROVED.—Dodd v. Arnold, 28 Texas, 101; McCreary v. Gaines, 55 Texas, 485; Small v. Robinson, 69 Maine, 425; Robinson v. Baker, 5 Cushman, 127; Saltus v. Everett, 20 Wendell, 267, and Gibson v. Gwinn, 107 Massachusetts, in so far as they refer to extent of a livery stable keeper's lien, approved.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

*P. H. Wood*, for appellant, cited Smith's Mercantile Law, 692; 7 Wait's Actions and Defenses, 215; cases collated in 2 Bouvier's Law Dictionary, title Liens, page 49, section 10; Wells v. Ragland, 1 Swann (Tenn.), 501; Sanford v. Willson, 2 Will., section 249; Dodd v. Arnold, 28 Texas, 101, and cases cited; Opinion of Senator Verplanck in Saltus v. Everett, 20 Wendell; 2 Will., section 248; Id., section 820; White & Willson, sections 272, 699.

*Brenemann & Bergstrom*, for appellee.

STAYTON, ASSOCIATE JUSTICE. This action was brought by the appellant to recover a horse which belonged to him and was alleged to be of the value of six hundred dollars.

The appellee alleged and proved that he was the keeper of a public stable in the city of San Antonio, kept exclusively as a racing and training stable, at which he boarded running and trotting horses and trained them for their owners. The appellant loaned the horse to one Freeman, to be used by him in the city of Houston, where the appellant resided, Freeman agreeing to pay for his feed. This was in August, 1884. Freeman subsequently sought permission to take the horse to San

Antonio, and this was refused. Early in the following September, however, Freeman, without the consent or knowledge of appellant, took the horse to San Antonio and placed him in the stable of one McKinney, a stable man, who kept the horse until the charges for his care amounted to eighty-nine dollars and twenty-five cents.

Freeman then requested the appellee to receive the horse from McKinney, pay the charges on him and to keep him in his stable, all of which the appellee did until this action was brought.

McKinney knew that the horse was taken to San Antonio without the consent of his owner, but the evidence all tends to show that the appellee believed the horse belonged to Freeman. There is no evidence from which it could be inferred that Freeman had authority as agent for the appellant to take the horse to San Antonio or to incur on his behalf any expense whatever on account of the horse; on the contrary, the appellant at all times sought to have the horse returned to Houston, and was informed by Freeman that the horse was paying his expenses and would be returned soon. Matters thus went on until April, 1885, when the appellant employed an attorney to look after the matter, from whom he learned that the horse was held by the appellee for charges which he made for care of the horse and money paid to McKinney. About that time Freeman left the country.

Freeman evidently took the horse to San Antonio for the purpose of racing him, but without permission from appellant to do so. There is no conflict in the evidence as to the facts that the horse was taken to San Antonio, not only without the consent of the owner, but against his will, and that the sole power or right given to Freeman was to use the horse in the city of Houston, in consideration that he would exercise him and pay for his feed.

The appellant brought suit for the possession of the horse, and the appellee claimed a lien on him to secure his charges for keeping him, at the rate of thirty-five dollars per month; the sum he had paid to McKinney, and the further sum of seventeen dollars and sixty-five cents, which he claimed for shoeing and medicine for the horse while in his possession. The cause was tried without a jury, and judgment rendered in favor of the appellant for the horse, and in favor of the appellee for the sum of two hundred and sixty-one dollars and ninety cents, and a lien on the horse to secure this sum was declared. The judg-

ment further directed that the horse be sold, and that so much of the proceeds of sale as should be necessary to pay the judgment and interest, and for keeping the horse subsequent to the judgment at the rate of fifteen dollars a month, should be applied to these purposes, and that the residue be paid to the appellant; but it directed that, in case the proceeds did not amount to enough to satisfy the judgment in favor of the appellee, for the balance an execution should issue against the appellant.

In so far as the court below found that the appellant was liable for the sum adjudged against him, on the ground that Freeman was his agent in creating an indebtedness on account of the horse, the finding is not sustained by the evidence. This seems to be the ground on which the court placed its judgment. Under the uncontroverted evidence, Freeman was a wrong doer when he removed the horse from the city of Houston, and the rights of the parties must depend upon the right of the appellee to a lien under the facts.

The statute provides that "proprietors of livery or public stables shall have a special lien upon all animals placed with them for feed, care and attention, as also upon such carriages, buggies or other vehicles as may have been placed in their care, for the amount of the charges against the same." (Rev. Stats., art. 3183.) There is nothing in this statute to indicate an intention to give such a lien on property which may be placed in such a stable as is mentioned by some person neither the owner nor the agent of the owner. It has been held that the lien given by the common law to an inn keeper, upon the horse of a traveler who becomes his guest, will attach, although the guest may have stolen the horse; but it is not believed that such a lien has ever been held to exist upon property placed with one, who has a lien only by force of a statute, by a person not the owner or the agent of the owner.

In New Hampshire a statute existed which provided that "any person to whom any horses, cattle, sheep or other domestic animals shall be entrusted, to be pastured or boarded, shall have a lien thereon for all proper charges due for such pasturing or board, until the same shall be paid or tendered."

In Sargent v. Usher, 55 New Hampshire, 289, in opinions by each of the judges, it was held that a mortgagor of horses could not, under that statute, create a lien in favor of a person who had boarded the mortgaged property, the title thereto being, under the rule of decisions in that State, in the mortgagee. In

that case, as in this, it was urged that the person who made the contract for the board of the horses ought to be considered the agent of the owner from the fact that he had the possession with the consent of the owner, and that it was the duty of the owner to give notice of his ownership when he knew that the horses were in the plaintiff's barn; but it was denied that the fact of possession conferred an agency which would empower the possessor to create a lien, or that knowledge of the feeding in the absence of knowledge by the owner that the mortgagor was not paying for it or that it was bestowed on the faith of a lien on his property, required the owner to give notice of his right.

In the course of the opinion it was said: "The idea that a lien may be created by a contract of the possessor of animals for their keeping, the owner being in no way privy to such contract, when no rights whatever, as against the owner, could be conferred or created by a contract of sale, seems anomalous to say the least. Such a thing would, as it seems to me, be a violation of the fundamental rights of property guaranteed by the Constitution."

"The general principle seems to be well settled that in regard to sales of personal property the buyer can not shift from himself the responsibility of looking to the title to the property. * * * It is also settled that the seller can not transfer to the buyer any right which he does not himself possess, unless the owner of the property has in some way put it in the power of the seller to assume the appearance of ownership and defraud the purchaser; and that merely entrusting a party with the possession by the owner is not such an act unless he also in some way gives the party the *indicia* of ownership."

In the case before us Freeman had nothing but a naked wrongful possession, and no act of the appellant appears which could have influenced the appellee to believe that Freeman was the owner of the horse, or that he was authorized to do any act through which a lien could arise.

The following cases, it seems to us, assert the true rule, and the principles set forth in them are decisive of the questions involved in this: Dodd v. Arnold, 28 Texas, 101; McCreary v. Gaines, 55 Texas, 485; Small v. Robinson, 69 Maine, 425; Robinson v. Baker, 5 Cushing, 127; Saltus v. Everett, 20 Wendell, 267; Stevens v. Railroad, 8 Gray, 262; Gibson v. Gwinn, 107 Massachusetts, 126.

Under the evidence the judgment should have been for the appellant, and that rendered by the district court will be reversed and judgment here rendered for the appellant for the possession of the horse described in his petition, and if the horse be not delivered that the appellant recover of the appellee the sum of six hundred dollars, the proved value of the horse, with interest thereon at the rate of eight per cent per annum, from the twenty-ninth day of June, 1885, and further, that the appellant have and recover from the appellee all costs incurred in this court and in the court below. It is so ordered.

*Reversed and rendered.*