SAN ANTONIO CATTLE LOAN CO. et al.
v. BLALACK & SON.   (No. 7033.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 21, 1923. Rehearing Denied Dec. 19, 1923.)

**1. Pleading ⇐⇒251—Amended petition should disclose date of pleading displaced.**

An amended petition should disclose the date of the filing of the pleading it seeks to displace.

**2. Subrogation ⇐⇒1—"Subrogation" defined.**

Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subrogation.]

**3. Subrogation ⇐⇒33(2)—Persons entitled to, must work through creditor whose rights they claim.**

Persons entitled to subrogation must work through the creditor whose rights they claim, and can only enforce such rights as the creditor could enforce.

**4. Subrogation ⇐⇒23(2)—Generally payer of debt on agreement with debtor subrogated to creditor's rights.**

Generally where a stranger pays the debt of another, secured by a mortgage, and it is agreed between the party who pays the debt and the debtor that the first party shall have

the first lien, the payer of the debt will be subrogated to the rights of the original creditor, and generally such agreement may be implied from facts and circumstances.

**5. Subrogation ⇐⇒26—Mere "volunteer" not entitled to.**

One who, acting on his own initiative, pays the debt of another without invitation, compulsion, or for self-protection, is not entitled to subrogation, he being known as a volunteer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Volunteer.]

**6. Subrogation ⇐⇒23(2)—Where debts against cattle paid at owner's request, payer subrogated to creditor's rights.**

Where the owner of cattle negotiated loan thereon, stating that he wanted lender to take over the cattle and mortgages on them, that certain creditors had first liens, and that he would give a first lien and let lender take the lien and stand in shoes of creditors, and lender advanced the funds to pay off the other creditors it was subrogated to their rights.

**7. Chattel mortgages ⇐⇒138(1) — Pasturage lien without consent of mortgagee held inferior to mortgage.**

In view of Rev. St. art. 5671, lien for pasturage obtained without authorization or consent of a mortgagee holding a lien prior in time to the lien for pasturage is inferior to lien of the prior mortgage.

**8. Subrogation ⇐⇒26 — Parties taking over mortgages on cattle not volunteers.**

Where a loan company, at request of owner of cattle, paid off liens with the understanding that it stood in the shoes of the creditors, it was not a volunteer.

Appeal from District Court, Uvalde County; Joseph Jones, Judge.

Suit by Blalack & Son against Lichte & Thompson and others. Judgment for plaintiff, and certain defendants appeal. Affirmed in part, and reversed and rendered in part.

Terrell, Davis, Huff & McMillan, of San Antonio, for appellants.

G. B. Fenley, of Uvalde, and W. B. Teagarden, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellees, a partnership, against Lichte & Thompson for pasturage in the sum of $7,371, due on certain cattle, and a statutory lien for the pasturage was claimed on 460 steers in their possession, in a certain pasture in Zavalla county. Appellees, as plaintiffs, alleged that the San Antonio Cattle Loan Company and Central Trust Company, of San Antonio, Tex., were claiming an interest in said cattle, and made them parties to the suit. The suit was instituted in Zavalla county, but, by agreement, was transferred to Uvalde county, where it was tried. By agreement a bond was given by appellants,

and the cattle were placed in their possession. The surety on the bond, Ætna Casualty & Surety Company, was made a party to the suit. The cause was tried without a jury, and judgment rendered, in substance, that, although certain liens held by Evans-Snider-Buel Company and the Central Trust Company had been superior to the statutory lien of appellees, for pasturage on the cattle, appellants were not, by payment of the claims forming the basis for the superior liens, subrogated to such superior liens, and that appellees should recover as against Lichte & Thompson, the San Antonio Cattle Loan Company, the Central Trust Company, and the Ætna Casualty & Surety Company the sum of $8,135.11.

The facts are that on July 1, 1920, appellees and Lichte & Thompson entered into a written contract by which appellees bound themselves to pasture 800 or more steers for the other party for 12 months, in a pasture in Dimmit and Zavalla counties, known as the East and Tortuga pasture, for a consideration of $9 a head, and appellees also agreed to drive the cattle from the railway station to the pasture, and deliver again at such station without any additional expense to the owners. Permission was given to sell off the original cattle and substitute others for them. The cattle were placed in the pasture under the terms of the contract. Afterwards, Lichte & Thompson were permitted by appellees to move 359 of the cattle out of the Tortuga pasture, leaving in appellees' pastures about 460 head of steers. The last-named cattle remained in the pastures for the full year of the contract, which expired on July 21, 1921. On September 27, 1921, a contract was made between appellees and the San Antonio Cattle Loan Company, whereby the pasturage for the cattle was to continue and be paid for by the latter. The pasturage has been paid since July 1, 1921.

[1] The cause was tried on an amended petition, which does not, as it should, disclose the date of the filing of the pleading it sought to displace, so doubt is created as to the date of the suit. The contract last named, however, shows that the suit was begun prior to September 27, 1921. A bond was given in connection with the contract to protect appellees in case appellants desired to remove the cattle from the pastures. It was proved that Evans-Snider-Buel Company and the Central Trust Company had liens on the cattle of Lichte & Thompson for debts due them prior to the time that the cattle were placed in the pastures of appellees on July 1, 1920, and that said liens were given to secure certain debts and were superior to any lien for pasturage afterwards acquired by appellees and that such debts were fully paid off and discharged by the San Antonio Cattle Loan Company. On July 21, 1920, Lichte & Thompson executed and delivered to the San Antonio Cattle Loan Company a mortgage on cattle, covering those in controversy, to secure them for money which was used in taking up the prior mortgages. The contract of pasturage between appellees and the owners of the cattle was not recorded. There was nothing in writing referring, in terms, to the matter of subrogation.

[2, 3] The only substantial question in this case is, Do the facts, under the law, show subrogation in favor of the San Antonio Cattle Loan Company, which admittedly paid off and discharged the debts due by Lichte & Thompson to the two firms, which were secured by liens superior to all others? Subrogation, in a broad sense, is the substitution of one person in the place of another with reference to a lawful claim or right. It is purely an equitable right, and is subject to the rules affecting equitable rights. The person entitled to subrogation must work through the creditor whose rights he claims, and can only enforce such rights as the creditor could enforce. That is, the subrogee, as a general rule, stands in the shoes of the creditor, and can enforce every right which the creditor could have enforced which were necessary to secure reimbursement or contribution. As said by Mr. Pomeroy (6 Equity Jurisprudence, § 920):

"When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in the performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor."

[4] It is the general rule that, where a stranger pays the debt of another, which is secured by a mortgage, and it is agreed between the party who pays the debt and the one who owes it, that the first party shall have the first lien, the payer of the debt will be subrogated to all the rights of the original creditor. Some courts have held that there must be an express agreement between the parties that the security shall be kept alive, and that was the rule under the civil law. Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204. The generally accepted rule at the present time, however, is that an express agreement is not necessary, but, if such agreement can be implied from the surrounding facts and circumstances, equity will hold that the agreement was made. 25 R. C. L. Subrogation, p. 1340, § 24.

[5] Of course one, who, acting upon his own initiative, pays the debt of another without invitation, compulsion, or for self-protec-

tion, is not entitled to subrogation. He is one known as a volunteer. 6 Pom. Eq. § 921.

The doctrine of subrogation has not been carried to a greater or more comprehensive extent than in the decisions of the state of Texas, and it has been held that, where money was advanced to pay off a valid lien on the homestead and the money was applied to that purpose, the lender was subrogated to the rights of the original lienholder, although no assignment of the lien was taken. The subrogation did not depend upon a written agreement between the debtor and the lender of the money, but on a verbal agreement. No notes or liens were transferred. Hicks v. Morris, 57 Tex. 658; Dillon v. Kauffman, 58 Tex. 696; Joiner v. Perkins, 59 Tex. 300; Eylar v. Eylar, 60 Tex. 315; Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Railway v. Investment Co. (Tex. Civ. App.) 201 S. W. 718; Sanger v. Ely & Walker (Tex. Civ. App.) 207 S. W. 348; Harrison v. First Nat. Bank (Tex. Com. App.) 238 S. W. 209. In all of these cases, where the subject is mentioned, it is held that discharge of the debt and cancellation of the superior lien would not destroy the right of subrogation. The debt will be binding and the lien alive and active under the rule of subrogation. Pridgen v. Warn, 79 Tex. 588, 15 S. W. 559; Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78. As said in the cited case of Dillon v. Kauffman:

"The substitution of one note for another, or the cancellation of the former mortgage and supplying its place with a new one, does not affect the subrogation, but the claim may be enforced against the property incumbered by the original lien, no matter what changes may have occurred in the form of the instruments."

A number of the cases cited are those involving homesteads, but the application of the rules can lie and are made in regard to liens of any kind or character. The fact that W. R. King may not have thought of subrogation could not destroy the agreement between Lichte and Browne.

[6] Applying these principles to the facts of this case, we find that the debts of the Evans-Snider-Buel Company and the Central Trust Company were paid and discharged at the instance and request of the debtors, Lichte & Thompson; that Lichte, acting for his firm, negotiated a loan with the San Antonio Loan & Cattle Company, stating that he wanted the company to take over the cattle and the mortgages on them; that the creditors had first liens on the cattle, and stated that he would give a first lien on the cattle and have the company to take "the lien and stand in the shoes of the Central Trust Company and the Evans-Snider-Buel people." Acting upon that statement, the loan of $61,000 to pay off the debts was made. These facts were sworn to by Mark L. Browne, sec-

retary of the Loan Company, and by Herman Lichte. Browne inspected the cattle for the Loan Company and nothing was said to him about any lien for pasturage, and no such lien was disclosed by the records of the county, although they were searched. In fact, at the time of the inspection of the cattle, the contract for the pasturage had not been executed. All of the negotiations as to the payment of the amounts secured by first liens on the cattle were made by and between Lichte and Mark L. Browne. The latter was empowered with W. R. King, president of the Loan Company, to make the loan. Browne was the active agent in this instance, and he and Lichte swear positively to facts that create subrogation in favor of the Loan Company beyond a doubt. Browne inspected the cattle, and upon his report to King the loan was made. King knew nothing of the terms of the contract, so far as the record discloses. According to the testimony of one of the attorneys for appellees, he had a conversation with W. R. King more than a year after the contract was made, in which King said:

"Oh, well, you know how that was, at the time this contract was made everything was rosy and bright; cattle were high and everybody was prosperous, and such a thing as subrogation was not thought of."

This was a mere, loose opinion, given by a man who was not shown to know any of the details of the contract, and he was in no position to know what any one else had thought of subrogation, even if he really understood what subrogation meant. It would be no reflection on one not a lawyer if he did not have any conception of the meaning of the term, because it is a word confined almost entirely to the legal profession, and a subject on which courts sometimes have disagreed. The unfounded opinion should not be permitted to destroy the positive testimony of the two parties who made the contract.

[7] It has been definitely settled, by a number of decisions of the appellate courts of this state, that a lien for pasturage, obtained without authorization or consent of a mortgagee holding a lien prior in time to the lien for pasturage, is inferior to the lien of the prior mortgage. Stott v. Scott, 68 Tex. 302, 4 S. W. 494; Blackford v. Ryan (Tex. Civ. App.) 61 S. W. 161; Masterson v. Pelz (Tex. Civ. App.) 86 S. W. 56. The last-cited case was decided by this court, and it is cited and followed by the Supreme Court of Texas, in the case of Am. Type Founders' Co. v. Nichols, 110 Tex. 4, 214 S. W. 301; Ferrell v. McCormac (Tex. Com. App.) 215 S. W. 559; Holt v. Schwarz (Tex. Civ. App.) 225 S. W. 856; Dallas State Bank v. Crismon (Tex. Civ. App.) 231 S. W. 857; Overland Auto Co. v. Findley (Tex. Civ. App.) 234 S. W. 106. The case of Houston National Bank v. De Blanc, 247 S. W. 897, decided by the Court of Civil Appeals of the Ninth District, is cited as hold-

ing a contrary doctrine. If this be true, it will not be followed, because in the teeth of rulings of the Supreme Court and several Courts of Civil Appeals. It may be that the decision in question can be differentiated from the other cases by the fact that the pasturage was ,contracted for by the holder of the superior lien. This seems doubtful, however, from some of the broad statements made in the opinion in regard to facts of doubtful force to uphold them. This court will follow its consistent course in the matter until the Supreme Court sees fit to overrule itself and the several Courts of Civil Appeals. There is no testimony tending to show that the Loan Company ever agreed to the payment of any pasturage until long after the claim sued on had accrued.

It would seem to be a question not open to discussion that a lien for pasturage could not take precedence over a prior lien, as the statute positively provides that such statutory liens shall not in any manner affect or impair any lien created by special contract, or any lien arising at common law or equity or by statute. Rev. Stats. art. 5671.

[8] There is no testimony tending to show that the Loan Company was a volunteer in the matter of taking up the superior liens on the cattle, and the rule as to volunteers has no application to it. As said by Mr. Pomeroy (6 Eq. Jur. § 921):

"A mere volunteer, it is generally agreed, is never entitled to subrogation. The term is used to designate one who, acting upon his own initiative, pays the debt of another without invitation, compulsion, or the necessity of self-protection."

The Loan Company does come within the purview of this definition. Harrison v. First Nat. Bank (Tex. Com. App.) 238 S. W. 209.

We are of opinion that the liens held by Evans-Snider-Buel and the Central Trust Company were superior to any statutory or other lien held by appellees, and that, when the debts due them by Lichte & Thompson were paid off by the San Antonio Cattle Loan Company, the latter was subrogated to all rights under the superior liens, and therefore its lien is superior to that held by appellees. It is therefore adjudged that the judgment for their debt for pasturage of appellees against Lichte & Thompson be affirmed, but that the same be reversed in so far as it affected the San Antonio Cattle Loan Company, the Central Trust Company, and the Ætna Casualty & Surety Company, and it is adjudged that the liens held by the San Antonio Cattle Loan Company on the cattle are superior and prior to any and all liens held by appellees, by reason of the subrogation of the San Antonio Cattle Loan Company to the debts of Evans-Snider-Buel Company and the Central Trust Company, and it is also ordered that the San Antonio Cattle Loan Company recover of appellees all costs incurred by appellants in this behalf.

Affirmed in part, reversed and rendered in part.