**FIRST NAT. BANK OF MT. CALM v. ROLLER et al.** (No. 510.)*

Court of Civil Appeals of Texas. Waco.
May 19, 1927.

Rehearing Denied Nov. 10, 1927.

1. **Husband and wife** ⟨⟩85(4)—Married woman, though not known to be married, held not liable on indorsement of vendor's lien notes which her husband did not join (Rev. St. 1925, art. 4623).

Under Rev. St. 1925, art. 4623, married woman *held* not liable on an indorsement of vendor's lien notes, which her husband did not join, and the fact that parties were ignorant of her being a married woman does not change situation, nor estop her from pleading coverture.

2. **Husband and wife** ⟨⟩179, 265—Married woman, abandoned or not supported by husband, can, under certain conditions, convey separate property and bind community estate.

A married woman, who is abandoned by her husband or when he fails to support her, can, under certain conditions, convey her separate property and make obligations that will bind community estate.

3. **Husband and wife** ⟨⟩65—Woman does not cease to be married woman, though she may be permanently separated from her husband.

A woman does not cease to be a married woman in contemplation of law, although she may be permanently separated from her husband.

4. **Husband and wife** ⟨⟩112—Statutes ⟨⟩1, 176—Legislature may make any laws deemed best to protect married woman's property; it is prerogative of Legislature to make laws, and duty of court to construe and enforce them.

The Legislature has the power to make any laws it deems best for protection of married woman's property; it being the prerogative of the Legislature to make laws, and duty of courts to construe and enforce them.

5. **Bills and notes** ⟨⟩296—Bank selling and indorsing past-due notes without recourse warranted that married woman, who was prior indorser, had capacity to indorse them (Rev. St. 1925, art. 5936, § 65).

Under Rev. St. 1925, art. 5936, § 65, bank selling and indorsing vendor's lien notes without recourse, after they were past due and had been theretofore indorsed by married woman, warranted that such married woman had capacity to indorse them at the time she did so.

6. **Limitation of actions** ⟨⟩95(1)—Limitations do not begin to run against action for breach of warranty or on covenant of title until defect is known or should have been ascertained (Rev. St. 1925, art. 5527).

Statute of limitations (Rev. St. 1925, art. 5527) does not begin to run against an action for breach of warranty or an action on covenant of title until defect is known, or until by use of reasonable diligence party should have ascertained such fact.

7. **Limitation of actions** ⟨⟩95(1)—Limitation in favor of bank, sued for breach of warranty by indorsing notes theretofore indorsed by married woman, held not to begin to run until marriage was ascertained by plaintiff (Rev. St. 1925, art. 5936, § 65).

In action by innocent purchaser of vendor's lien notes against bank on warranty, under Rev. St. 1925, art. 5936, § 65, by indorsing notes without recourse, which notes had been theretofore indorsed by married woman who, at time of indorsement, was not known to be married, *held*, that statute of limitations did not begin to run in favor of bank on its warranty until married woman filed her plea of coverture, thus apprising plaintiff of fact of her marriage.

8. **Appeal and error** ⟨⟩1033(9)—Erroneous method of ascertaining amount of judgment did not injure defendant, where it was for less sum than plaintiff was entitled to.

Though trial court arrived at amount of judgment by an erroneous method where amount actually rendered is for less sum than plaintiff was entitled to, defendant was not injured thereby.

9. **Subrogation** ⟨⟩7(2)—Bank, paying outstanding liens prior to vendor's lien notes to protect its title, held entitled to priority over holder of notes.

Bank, purchasing land subject to outstanding liens prior to vendor's lien notes and paying such liens in order to protect its title, became subrogated and entitled to liens, and was entitled to have said amounts repaid to it be-

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted January 25, 1928.

fore purchaser of vendor's lien notes would be entitled to any of proceeds of sale of land.

Appeal from District Court, Limestone County; W. T. Jackson, Judge.

Action by H. C. Roller against the First National Bank of Mt. Calm and others. From the judgment, both plaintiff and the named defendant appeal. Affirmed.

Bryan & Maxwell, of Waco, and Black & Graves, of Austin, for appellant.

C. S. & J. E. Bradley, of Groesbeck, Oltorf & Oltorf, of Marlin, I. W. Keys, of Mexia, Allen D. Sanford, of Waco, Ira Lawley, of Groesbeck, and Bailey & Bailey, of Dallas, for appellees.

BARCUS, J. This suit was prosecuted by H. C. Roller against P. C. Wilie, Mrs. C. R. Menefee, First State Bank & Trust Company of Mt. Calm, First National Bank of Mt. Calm, and G. W. Thomason to recover judgment on two vendor's lien notes for $500 each, and to foreclose a deed of trust securing a note for $2,121.25 on three tracts of land, one containing 98 acres, one 83 acres, and one 100 acres. Mrs. Menefee was sought to be held liable on the notes by reason of having indorsed same, said notes having been payable to the First National Bank of Mt. Calm, which had without recourse indorsed and sold same to appellee Roller. Mrs. Menefee answered, pleading coverture, and upon her filing her plea of coverture appellee Roller amended his petition, praying for judgment against the First National Bank of Mt. Calm, on its indorsement if it should develop that Mrs. Menefee was not liable by reason of coverture. The First State Bank for answer alleged that the property had been transferred to it by P. C. Wilie in satisfaction of certain indebtedness which Wilie owed said bank, and that in order to protect its title it had been compelled to pay certain debts and liens against the land, totaling $4,680, and that by having paid same it was subrogated to the rights of the holders of said first lien notes. George W. Thomason pleaded the statute of limitation, he having been the original signor of the vendor's lien notes. The First National Bank pleaded limitation as against the claim of appellee Roller on its indorsement, and further alleged that it indorsed the notes without recourse and was not therefore liable. All of the parties alleged that Mrs. Menefee was estopped from pleading coverture and prayed that she be held on her indorsement.

The cause was tried to the court and resulted in a judgment sustaining Thomason's plea of limitation, from which there is no appeal; rendering judgment for Roller against P. C. Wilie for the amount sued for, from which there is no appeal; rendering judgment in favor of the First State Bank of Mt. Calm for.$4,680, with a foreclosure of a

first lien on the 83 and 98 acre tracts; rendering judgment for Mrs. Menefee on her plea of coverture; rendering judgment in favor of Roller against the First National Bank for $4,500, with interest from January 3, 1922, at 8 per cent.; and providing that the lands should be sold and the proceeds of the 83 and 98 acre tracts be applied first to the payment of the $4,680 judgment of the First State Bank, and the remainder of the proceeds from said two tracts and the proceeds from the sale of the 100-acre tract be applied on the judgment which Roller obtained against Wilie, and that, if said lands did not sell for sufficient to pay the entire judgment rendered in favor of Roller against the First National Bank, he have execution for the remainder against said bank. There were some other parties to the litigation who were dismissed and are not necessary to be mentioned.

The First National Bank excepted to that portion of the judgment which authorized a recovery against it. Roller excepted to the judgment in so far as it gave the First State Bank a first lien on the two tracts of land, and in so far as the trial court refused to give him judgment against Mrs. Menefee.

[1] Appellant and Roller each complain of the action of the trial court in sustaining Mrs. Menefee's plea of coverture. We overrule these assignments. Mrs. Menefee's husband died in 1911. On November 9, 1920, she and W. J. Edwards were married at Waxahachie, and the next day Mrs. Edwards, née Menefee, went to the home of her daughter, Mrs. P. C. Wilie, near Mt. Calm, and did not thereafter at any time visit or live with Mr. Edwards, and about three years thereafter he died. None of the parties involved in this litigation were in any way advised of or knew of the marriage of Mrs. Menefee to Mr. Edwards until long after she had indorsed the notes in controversy. At said time she had an account with the First National Bank and the First State Bank of Mt. Calm in the name of Mrs. C. R. Menefee, and continued same, and continued to manage her farms and business affairs as she had in the past. In December, 1920, after she and Mr. Edwards were married in November, the First National Bank required P. C. Wilie, who was a son-in-law of Mrs. Menefee, to either pay or give security for some notes which it held against him. At that time he was obligated to the First National Bank on three vendor's lien notes for $500 each, secured by lien on the 82 and 98 acre tracts, and $2,121.25 which was unsecured. In order to secure the bank Mr. Wilie executed a deed of trust on the three tracts of land and had his mother-in-law, Mrs. Menefee, indorse the three vendor's lien notes and sign with him as surety the $2,121.25 note. At that time there were outstanding liens against the land for $4,680, which were prior and superior liens to the

ones held by the First National Bank. In the summer of 1921 the First National Bank, through its cashier, Mr. Hillyer, took up with Mrs. Menefee the question of her paying the notes, but without any definite refusal on her part to pay and without her having paid same. In December, 1921, the First National Bank insisted on Mr. Willie's paying the notes, and he made arrangement to have appellee Roller take up the three vendor's lien notes and the $2,121.25 note secured by the deed of trust, and said four notes were, about January 3, 1922, transferred and indorsed to Roller by the First National Bank of Mt. Calm without recourse, appellee Roller paying said bank for said four notes the sum of $4,500. The record shows that Mr. Roller and his wife had some family troubles which resulted in her filing suit for divorce and having a receiver appointed for all of Mr. Roller's estate. The receiver, Louis M. Seay, brought this suit in June, 1924, seeking to recover on the last two of the vendor's lien notes and the $2,121.25 note. Sometime after the suit was brought Mr. and Mrs. Roller settled their matrimonial differences, the receiver was discharged, and Roller was substituted as plaintiff in this suit. It appears that no action was taken in this suit until in 1925, when Mrs. Menefee, after being served with citation, filed her answer pleading her coverture as a defense against the cause of action as alleged by the various parties against her. It appears that this was the first time that Roller was in any way informed of or knew of Mrs. Menefee's marriage to Edwards, or of her having been a married woman at the time she indorsed the notes.

[2-4] Under the statutes and holdings of our courts, a married woman, when she is abandoned by her husband or when he fails to support her, can, under certain conditions, convey her separate property and make obligations that will be binding upon the community estate. Wright v. Hays, 10 Tex. 130, 60 Am. Dec. 200; Crowder v. McLeod (Tex. Civ. App.) 151 S. W. 1166; Bradley v. Gilliam (Tex. Civ. App.) 260 S. W. 289; Keys v. Tarrant County Building & Loan Ass'n (Tex. Civ. App.) 286 S. W. 593. Article 4623 of the Revised Statutes, 1925, however, provides specifically that:

"The wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

This statute is as plain as the English language can make it, and under its provisions a married woman cannot, without her husband joining her, bind herself by an indorsement or by a suretyship on any obligation. Red River Nat. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923; George v. Dupignac (Tex. Civ. App.) 273 S. W. 934. The fact that the parties were ignorant of Mrs. Menefee's being a married woman cannot have the effect of destroying the specific provisions of the statute. Our courts have held that a woman does not cease to be a married woman in the contemplation of the law, although she may be permanently separated from her husband. Cromer v. Schafer (Tex. Civ. App.) 250 S. W. 444. The Legislature has the power to make any law it deems best for the protection of a married woman's property. It is the prerogative of the Legislature to make laws, and the duty of the courts to construe and enforce same. Arnold v. Leonard (Tex. Sup.) 273 S. W. 799; Red River Nat. Bank v. Ferguson, supra.

[5-7] Appellant, First National Bank, contends that the four years' statute of limitation (Rev. St. 1925, art. 5527) bars appellee Roller from recovering on the warranty which it made under the statute by indorsing said notes without recourse. It appears that Mrs. Menefee, in December, 1920, after the notes in controversy were due, indorsed same. Thereafter the First National Bank sold same in January, 1922, to Roller and indorsed them without recourse. At said time Mr. Roller knew the notes were long past due, but did not know Mrs. Menefee was a married woman at that time, or that she was married at the time she indorsed the notes, and was not in possession of any facts that would put him on notice thereof. His first information with reference thereto was when she filed her answer in this cause pleading her coverture. Upon her filing said plea he amended his petition and made the First National Bank a party defendant, asking for judgment against said bank on its warranty by reason of its qualified indorsement under the statute, if it should be shown, as a matter of fact, that Mrs. Menefee was a married woman at the time she indorsed the notes, and if it should be held, as a matter of law, that she was not bound by said indorsement. Section 65 of article 5936 of the Revised Statutes among other things, provides:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants: * * * (3) That all prior parties had capacity to contract."

Under this statute the First National Bank, having sold, delivered, and indorsed the notes without recourse, long after they were past due, to appellee Roller, warranted that Mrs. Menefee had capacity to indorse same at the time she did so. As before stated, Mrs. Menefee, having been a married woman at the time she indorsed the notes, was not bound and had no capacity at the time to make said contract of indorsement, and unless the bank can defeat its warranty with reference thereto by virtue of the statute of limitation, it is liable. Luse v. Beard (Tex. Civ. App.) 252 S. W. 243; Miller v. Stewart (Tex. Civ. App.) 214 S. W. 565. Appellee Roller contends that the stat-

ute of limitation would not begin to run until he discovered the incapacity of Mrs. Menefee to indorse the notes, or until by the exercise of reasonable diligence he should have discovered said fact. We agree with appellee's contention. The weight of authority seems to hold that an action for a breach of warranty or an action on a covenant of title does not begin to run until the defect is known, or until by the use of reasonable diligence the party should have ascertained said fact. P. H. Sheehy Co. v. Eastern Importing & Mfg. Co., 44 App. D. C. 107, L. R. A. 1916F, 810; Wells-Fargo & Co. v. Simpson Nat. Bank, 19 Tex. Civ. App. 636, 47 S. W. 1024; Ripley v. Withee, 27 Tex. 14; Anding v. Perkins, 29 Tex. 348; Texas & P. Ry. Co. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52; Port Arthur Rice Miling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S. W. 926, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629; Seibert v. Bergman, 91 Tex. 411, 44 S. W. 63. When appellee Roller purchased the notes from the First National Bank and paid face value therefor, they were all long since past due. They had been indorsed by Mrs. Menefee while the bank owned them. It is not claimed or even suggested by any of the parties that appellee Roller, before Mrs. Menefee filed her answer in this suit, knew that at the time she indorsed the notes she was a married woman or that he was in any way negligent in not having discovered said fact prior to said time, and appellant bank does not claim to have been in any way injured by appellee Roller not having learned said fact at an earlier date. We are of the opinion that, under the facts in this cause, limitation did not begin to run in favor of the First National Bank on its warranty until Mrs. Menefee filed her answer in this cause.

[8] Appellant contends that in any event the judgment against it is excessive, in that trial court rendered a judgment against it for $4,500, with interest at 8 per cent. per annum from January 3, 1922. It appears from the recitation of facts as contained in the judgment that the court based this portion of the judgment on the amount which the record shows Roller paid appellant at the time he purchased the four notes in January, 1922. Appellee Roller brought this suit on only two of the vendor's lien notes and the $2,121.25 note, and was only entitled to recover against the First National Bank on said notes. The amount of his recovery, however, was the amount which he was entitled to recover as against Wilie on the three

notes sued on, and the court rendered a judgment, about which there is no controversy, on said notes against Wilie for a total sum of $5,661.97, which is more than the amount for which it rendered judgment against the bank. The trial court arrived at the amount of the judgment to be rendered against appellant by an erroneous method. Since, however, the amount of judgment actually rendered against it is for a less sum than appellee was entitled to, appellant has not been injured thereby. The judgment of the trial court provides that the proceeds from the sale of the land are to be first applied on the judgment and only the remaining portion shall be paid by appellant, and the difference in the amount of the judgment against the bank becomes immaterial.

[9] Appellee Roller by his cross-assignments of error contends that the trial court was in error in rendering judgment in favor of the First State Bank of Mt. Calm and decreeing that said bank had a first lien on the two tracts of land to secure the $4,680 which it had paid to prior lienholders in order to protect its title. We overrule these assignments. It appears that Wilie was indebted to the First State Bank, and that in order to satisfy said indebtedness he transferred all of the land in controversy to the bank, subject to outstanding prior liens, amounting to $4,680, which said bank paid in order to protect its title. The bank did not in any way assume said indebtedness and was not, in any sense of the word, a volunteer in paying same, but was, under the facts in this case, required to pay said prior indebtedness in order to protect any equity which it might have. Under the law of subrogation, it became subrogated and entitled to the liens held by the parties holding said prior liens and was entitled to have said amounts repaid to it before Roller, who had, at the best, only second liens, would be entitled to any of the proceeds of the sale of the land. Blalack & Son v. San Antonio Cattle Loan Co. (Tex. Civ. App.) 256 S. W. 974; Id. (Tex. Com. App.) 267 S. W. 474; Harrison v. First Nat. Bank (Tex. Com. App.) 238 S. W. 209.

We have examined all of the assignments of error and cross-assignments and do not think any of them show any cause for reversing the judgment of the trial court. The original opinion filed herein is withdrawn, and this opinion is substituted in lieu thereof. Appellant's motion for rehearing is overruled, and the judgment of the trial court is affirmed.