DETERMINED ·IN THE

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### May, 1902.

---

HENRY HAMLIN, Appellant, v. JOHN B. SMITH and SAMUEL F. OOSTERHOUDT, as Executors, etc., of SAMUEL OOSTERHOUDT, Deceased, and Others, Respondents, Impleaded with the FIRST NATIONAL BANK OF OLEAN, Appellant.

*Statute of Limitations — effect of payments by executors on claims against the estate — payments made by executors with the consent of all parties in interest on claims barred by the statute — right of subrogation, of parties advancing money to the executors, to the claims paid therewith.*

Partial payments made by executors upon a promissory note, which was a valid claim against the testator's estate at the time of his death and at the time when such payments were made, will prevent the Statute of Limitations from running against the note for a period of six years from the time of each payment.

Where executors apply moneys borrowed upon their promissory note to the payment of valid claims against the estate, the note is a personal liability of the executors and cannot be enforced against the estate directly. In such a case the executors are entitled to be reimbursed out of the estate to the extent of the borrowed moneys which they have applied to the payment of valid claims against the same, and this being so the person who advanced the moneys is entitled, in the event of the failure of the executors to repay the same, to be subrogated to the rights of the executors and to compel payment of his claim out of the estate.

Where the executors, with the consent of the adult beneficiaries under the will, pay a claim against the estate which was known to all parties to have been barred by the Statute of Limitations, with moneys borrowed for that purpose and give their promissory note to the lender, the money so loaned is not a valid obligation against the estate, but is a valid obligation against the beneficiaries on whose behalf it was borrowed in proportion to the amount which each has received from the estate.

An action is maintainable, under sections 1837 to 1860 of the Code of Civil Procedure, to establish the claims of such claimants, to subrogate them to the rights of the creditors of the estate, who have been paid with the money advanced to the executors by such claimants, to have their claims adjudged to be liens upon the real property belonging to the estate, and if the proceeds thereof be insufficient to be paid by the devisees and legatees under the will of the decedent.

An executor or administrator has no authority to allow or pay a claim barred by the Statute of Limitations, nor will a partial payment by an executor or administrator on a claim so barred revive the demand against the estate.

APPEAL by the plaintiff, Henry Hamlin, and by the defendant, the First National Bank of Olean, from a judgment of the Supreme Court in favor of certain of the defendants, entered in the office of the clerk of the county of Cattaraugus on the 10th day of August, 1897, upon the report of a referee dismissing the plaintiff's complaint and adjudging the claim of the defendant bank to be invalid as against any of the other defendants.

The action was commenced on the 23d day of November, 1894, to establish the amount of plaintiff's claim and to have him subrogated to the rights of the creditors of the estate of one Samuel Oosterhoudt, deceased, who were paid with moneys advanced by the plaintiff to the defendants, executors, for that purpose, to have it adjudged that the real property, if any, still belonging to the estate of the deceased be sold and the proceeds applied upon plaintiff's claim and that the balance remaining unpaid, if any, be adjudged to be paid in proper proportions by each of the defendants, devisees and legatees under the last will and testament of said Oosterhoudt, deceased, who received devises of real property under said will, and to have such indebtedness declared a lien upon such realty. Substantially the same relief was demanded by the defendant, the First National Bank of Olean, as to its claim. One of the defenses interposed by the defendants is the Statute of Limitations, which was found by the referee to be available and to bar a recovery by the plaintiff and by the defendant bank, impleaded, etc. The availability of such statute as a defense presents the chief question to be determined upon this appeal.

*Charles S. Cary*, for the plaintiff, appellant.

*J. H. Waring*, for the appellant First National Bank of Olean.

*M. B. Jewell*, for the respondents Samuel Arthur and Mary Alice Oosterhoudt

*Fred L. Eaton,* for the respondents John B. Smith and others.

*Carey D. Davie,* for the respondent Mary A. Allen.

McLENNAN, J.:

Samuel Oosterhoudt died at the city of Olean, N. Y., on the 12th day of November, 1884, leaving him surviving his widow, Mary H. Oosterhoudt, a son, Samuel F. Oosterhoudt, and two daughters, Eva E. Smith and Mary Alice Allen. He also left him surviving a grandson, Samuel Arthur Oosterhoudt, a granddaughter, Mary Alice Oosterhoudt, children of his son, Samuel F. Oosterhoudt, and a grandson, Samuel E. Smith, child of his daughter Eva E. Smith. He left a last will and testament bearing date November 3, 1884. which was duly admitted to probate on the twenty-sixth day of the same month. His widow, his son, and John B. Smith, the husband of his daughter Eva E. Smith, were named executors; they duly qualified and entered upon the discharge of their duties as such.

At the time of his death the testator owned a large amount of valuable real estate and a considerable amount of personal property, including sixty shares of the capital stock of the First National Bank of Olean, N. Y. The total amount of the personalty, including the bank stock, was not, however, sufficient to pay the indebtedness of the deceased.

By his will the testator devised certain real estate to his widow absolutely and bequeathed to her the income of his bank stock during her life. He devised to each of his children and to his granddaughter, Mary Alice Oosterhoudt, other of his real estate in fee, and bequeathed to his son and to each of his two minor grandsons twenty shares of his bank stock after the death of his widow. The balance of his property, which consisted of a considerable amount of real estate and some personalty, he devised and bequeathed to his three children, share and share alike.

The widow of the testator, Mary H. Oosterhoudt, died on the 10th day of June, 1890, leaving a last will and testament bearing date April 29, 1889, which was duly admitted to probate on the 7th day of August, 1891, and in which her son Samuel F. Oosterhoudt was named as sole executor, who duly qualified and entered upon the discharge of his duties as such. By her will she devised her real estate, all of which came to her under the will of her husband,

to her three children above named, either absolutely or during their lives, and in case the devise to any child was for life the fee was given to the next of kin of such child upon the termination of the life estate. The three children of the testator, Samuel Oosterhoudt, and his grandchildren, who were the only devisees and legatees under his will, the two surviving executors, the executor of the will of his widow and the creditors of the estate at the time of the commencement of this litigation, were all made parties, so that, so far as appears, all persons in any manner interested in the estate are parties to this action, and all, except some of the creditors, have duly appeared and answered, guardians having been duly appointed for the infant grandchildren.

Immediately upon the probate of Samuel Oosterhoudt's will the executors, who were the widow, son and son-in-law of the testator, and who were the only persons interested in the estate except Mary A. Allen, daughter of the deceased; Samuel A. and Mary A. Oosterhoudt, children of the son, and Eva E. and Samuel E. Smith, wife and child of the son-in-law, took possession of all the property, both real and personal, left by the testator, and managed and controlled it, not only as executors, but as agents for, and on behalf of, the devisees and legatees. They surrendered and delivered over to the devisees the real estate devised to them respectively; collected the rents and income therefrom, and paid the same over to them, notwithstanding the fact that, to the knowledge of all, the personal property was not sufficient to pay the indebtedness against the estate. Some of the real estate, which was specifically devised, and a part of that which constituted the residuum of the estate, was sold and the proceeds applied to the payment of the debts of the estate by the executors, with the consent of all the parties interested, and without reference to the fact that the personal property (the bank stock) had not been exhausted for that purpose. It seems to have been perfectly understood by all the parties that the property left by the testator, including that specifically devised, was liable for the payment of his debts, and by accepting and taking possession of the real estate specifically devised to them, the devisees apparently did not consider that it was thereby relieved from the lien of such indebtedness any more than if it had remained in the possession of the executors until the indebtedness had been fully discharged.

The executor Smith, who was sworn as a witness, and his evidence is not contradicted, testified: "The residuary legatees or devisees sold a farm in Olean for $7,750; in that sale we took a house and lot and this property down on Fifth street for $2,000; they paid us $5,750 in money. With that money we took up a note of Samuel Oosterhoudt's held by the First National Bank for $3,265, and paid a note of Tumser's that was endorsed by father for $1,000, I think. * * * We also paid a note at the same time made by George Phelps, endorsed by S. Oosterhoudt, of $1,352.90 out of that money. * * * The proceeds of the farm was all used to pay the debts. * * * There was an interest in a farm in Allegany County; that was sold by the children, the residuary devisees, to Mr. Sawyer for $1,700; I think there was some personal property; that money was deposited in the bank to the credit of Samuel Oosterhoudt estate, and used for the purpose of the estate — to pay debts."

Again, the witness said: "Out of these moneys which were deposited there in the name of Samuel Oosterhoudt we paid the taxes and other charges which were against the real estate; we gave checks for taxes or repairs or anything of that kind that was necessary, and for improvements which were made to the real estate; this one account which we had there in the bank represented not only the payments which were made by us as executors, but as well payments which were made by the heirs at law or devisees on account of taxes, repairs or improvements to the real estate, and the manner of paying the money was usually by drawing a check upon this general account which we had."

Again, the witness said: "There was but one bank account kept and that was in the name of S. Oosterhoudt estate; no part of that account was drawn out at any time by any one except the executors; the course of business was to have the executors draw it out upon their checks; don't think there was any drawn out for any purpose except for purposes connected with the estate."

The witness further said: "They (the family) * * * under the circumstances * * * all thought it best to each one take what was left them, and as there was quite a lot of undivided property, * * * they thought that they would assume their property and take it into their own hands, and pay whatever indebted-

ness there was against the estate out of the property that was undivided, and it was turned over to each one of them and they received the benefit of it; I don't think there was anything said about who should look after this undivided property that I spoke of; I suppose they understood that the executors would look after it; the executors began looking after it. This undivided property consisted of two farms and some wild land — those spoken of yesterday; the executors began looking after these farms and the undivided real estate; they made contracts to sell the farms; the heirs, the three children, executed the deeds; we have sold a number of pieces off of the wild land, as we call it; we made perhaps three or four contracts for that purpose; I think there has been three or four pieces sold outright and a number of contracts made; there was a piece of land sold to Mr. Bristol; the executors sold that out and out to him; the three children deeded it; they sold to a man named Brown; there was a deed given; the three children gave all the deeds of everything that was sold; there was a piece sold to Adolph Schubert; we gave him a deed; I don't remember who negotiated that, whether it was the executors or whether it was the heirs; I don't remember whether the deed was made right away; there was a piece sold to Henry Richardson; I think the contract was made by the executors, and afterwards he got a deed. A man named Cole got some; I think the executors made that contract and the same parties deeded it. The money that was received went to the executors and they used it in paying on debts. It went into the general fund; whenever we had any money in the bank and there was use for it, it was checked out; I can't tell what specific money went for any specific purpose. The money that came from these sales of land spoken of went to the executors, and as a general thing were deposited in the bank to the credit of the Samuel Oosterhoudt estate, and no separate account was kept between moneys received from land and moneys received from personal property, and when anything was to be paid it was paid out of any balance they had there at the time. Whenever we had any money in the First National Bank and there was a discount due, we paid it out of the general fund on these notes that were held by the First National Bank; the note was renewed and the discount charged up."

It also appeared that during the time when there were debts

against the estate pressing for payment, the executors gave notes as such for the same, and borrowed money upon their notes with which to pay some of such indebtedness, and this they did with the knowledge and consent of the widow and of the testator's children, although all knew the sixty shares of bank stock and some other personal property had not been disposed of. It conclusively appears that the widow and the children of the testator knew and fully understood how the business of the estate was being managed and carried on by the executors; knew that they were giving their notes as executors for debts against the estate, and were borrowing money upon notes so made by them for the purpose of paying debts; that the real estate which was not specifically devised was being sold and the proceeds applied to the payment of debts against the estate, although the bank stock had not been sold, all apparently for the purpose of avoiding the necessity of selling certain of the more desirable real estate or the bank stock which had been specifically devised or bequeathed. This course of dealing on the part of the executors continued until the death of the widow; then the two surviving executors continued, with full knowledge of all the other parties, to manage the estate substantially the same as before.

Plaintiff's claim is made up of three items :

*First.* A promissory note for $1,291.52, dated March 9, 1878, made by Samuel Oosterhoudt, deceased, payable to the order of Charles S. Cary eighteen months after date, upon which payments were made by the testator and indorsed thereon as follows : July 29, 1880, $65 ; January 4, 1881, $350 ; October 6, 1883, $150. After the testator's death (November 12, 1884) the executors made payments which were indorsed as follows : April 23, 1887, $356.80 ; July 27, 1887, $454.36 ; August 21, 1891, $140, leaving a balance due and unpaid of $338.63, with interest thereon from the date of the last payment. The note was duly assigned to the plaintiff before the commencement of this action. This note was not barred by the Statute of Limitations at the time of the testator's death, and was a valid claim against his estate at that time. The executors having made partial payments upon it from time to time until less than three years before the commencement of this action, it at no time became barred by the statute.

Where an administrator has regularly paid interest on a note given

by an intestate, neither he nor the next of kin can set up the Statute of Limitations against it. ( *Willcox* v. *Smith,* 26 Barb. 316.)

In *Heath* v. *Grenell* (61 Barb. 190) the head note is as follows : " A partial payment upon a promissory note past due, by the administratrix of one of the makers, a portion of which payment is from assets of the estate, if made before the statute of limitations has run against the note, saves the obligation from the operation of the statute up to that time. And this although the payment was the act of one of two administrators alone, without the consent of the other." (See, also, *McLaren* v. *McMartin,* 36 N. Y. 88.)

*Second.* On January 4, 1888, one James H. Grimes recovered two judgments in the Supreme Court against the estate of Samuel Oosterhoudt, deceased, amounting in the aggregate to about $2,600, on account of a liability which existed against said Oosterhoudt in his lifetime, which judgments were valid claims against his estate. Thereafter and on the 15th day of May, 1889, the three executors borrowed from the plaintiff the sum of $3,000, with which to pay said judgments and accrued interest, and gave him their promissory note for that amount. Partial payments were made and renewal notes given for the amount remaining unpaid by the three executors or the two survivors, from time to time until June 17, 1893, when a note for $1,700 was given, that being the amount of the sum originally borrowed remaining unpaid. The money received by the executors from the plaintiff upon the giving of the original note was applied in payment of the Grimes judgments, and the balance in payment of other debts against the estate.

If plaintiff's original claim of $3,000 was valid, the partial payments made thereon by the executors, under the authorities cited, prevented the Statute of Limitations from running against it. It is of no consequence that new notes were given from time to time for the amount remaining unpaid instead of indorsing the payments upon the original note. Plaintiff's claim was for the money loaned, and giving a note therefor or still another note in renewal thereof did not pay or discharge the original obligation. ( *Hill* v. *Beebe,* 13 N. Y. 556 ; *Jagger Iron Co.* v. *Walker,* 76 id. 521.)

A partial payment upon such an obligation in whatever form made, prevents the Statute of Limitations from running against it for six years from the time of such payment. But it is urged that

in no event is this item of plaintiff's claim enforcible against the decedent's estate. In borrowing the $3,000 from the plaintiff and giving their note therefor the executors became personally liable, incurred a personal obligation; one that undoubtedly could not be enforced against the estate directly. (*Sieckman* v. *Allen*, 3 E. D. Smith, 561; *Schmittler* v. *Simon*, 101 N. Y. 554.)

The consideration for the obligation incurred by the executors, to wit, the $3,000 received from the plaintiff, belonged to them, was their money, and having applied it to the payment of valid indebtedness against the estate, they are entitled to be reimbursed out of the estate. In the case of *Boyer* v. *Marshall* (5 N. Y. St. Repr. 431), decided at General Term, fifth department, it was held that a note signed by an administrator as such is his individual obligation, but if given to a creditor of the estate for a debt of the estate, the administrator is entitled to have it allowed him on his accounting. (See, also, *Matter of Rolph*, 29 N. Y. St. Repr. 64).

The fact that the executors became obligated to the plaintiff for the money with which to pay the Grimes judgments, instead of paying them with their individual funds which they may have had in the bank or elsewhere, cannot be important as bearing upon their right to be reimbursed for the amount paid by them to discharge such obligation.

The executors being entitled to be reimbursed out of the estate to the extent to which they obligated themselves to the plaintiff for moneys received from him and which they applied to the payment of valid debts against the estate, the plaintiff is entitled to be subrogated to the rights of the executors and to compel payment to him out of the estate of such sum as remains unpaid upon his claim.

In Sheldon on Subrogation (2d ed. § 206) the rule is stated as follows: "Though creditors who have made advances or rendered services to a trust estate must ordinarily look to the trustee personally for their payment, yet if the trustee would be entitled to reimbursement from the estate for his payment and is insolvent or a non-resident, equity will substitute the creditors to the rights of the trustee and allow them to be paid directly out of the estate."

A large number of authorities are cited by the author in support of the proposition.

The same principle is enunciated in *Willis* v. *Sharp* (113 N. Y. 586).

We conclude that the second item of plaintiff's claim was not barred by the Statute of Limitations at the time of the commencement of this action ; that the executors having borrowed the money constituting such claim for the purpose of paying valid debts against the estate of Samuel Oosterhoudt, and having paid such debts with the money so borrowed, and having become personally liable to the plaintiff therefor, they are entitled to be reimbursed out of the funds of the estate, and that the plaintiff, under the circumstances of this case, is entitled to be subrogated to their rights in that regard.

*Third.* On the 11th of June, 1888, the three executors, two of whom (the widow and son) were devisees and legatees under the will of Samuel Oosterhoudt, deceased, after consultation with the other adult beneficiaries (the two daughters) under such will, and with the knowledge and consent of all, borrowed from the plaintiff the sum of $2,200 for the purpose of paying a claim of one Lawton ; gave their promissory note dated that day to the plaintiff for the amount, and with the money paid the Lawton demand in full. Partial payments were made upon it by the executors and renewal notes given from time to time for any balance remaining unpaid, until March 18, 1893, when they made their promissory note dated that day for $1,400, the sum remaining unpaid.

At the time the executors borrowed the money the Lawton claim was barred by the Statute of Limitations, and was not enforcible against the estate of the decedent. It is clear, therefore, that the executors had no power as executors to pay said claim, and had no right to devote any of the assets of the estate to that purpose. The obligation which they incurred to the plaintiff was purely personal, and in no manner bound them as executors.

A partial payment by an administrator on account of a claim barred by the statute in the lifetime of his intestate, is not sufficient to revive the demand against the estate. (*McLaren* v. *McMartin*, *supra.*)

An executor or administrator is bound to set up the bar of the Statute of Limitations, and has no authority to allow a claim so barred. (*Butler* v. *Johnson*, 111 N. Y. 204.)

This item of plaintiff's claim, however, was not barred by the

Statute of Limitations as against the executors personally, or those for whom they were acting in making the loan. Partial payments having been made from time to time by authority of all, such obligation continued until six years from the date of the last payment. As we have seen, the money was borrowed by the three executors, with the knowledge and consent of the two other adult beneficiaries, for the purpose of discharging the Lawton claim, notwithstanding that, to the knowledge of all, it was barred by the Statute of Limitations. The widow and children of the testator consulted together, and determined that in good conscience the claim ought to be paid; in effect, that its payment was essential in order to preserve the good name of the decedent, and thereupon, through the instrumentality of the executors, acting for themselves individually and for the other adult beneficiaries, the money was obtained and the claim paid. Under those circumstances the claim should be satisfied out of the portion of the decedent's estate which went to the widow, the son and the two daughters, in proportion to the amount of the estate received by them respectively. They ought not to be permitted to obtain from an innocent party funds with which to pay a claim of this character, in order to preserve the good name of their testator, and then be relieved from all obligation in respect to it.

The conclusion is reached that the first two items of plaintiff's claim constitute valid demands against the estate of Samuel Oosterhoudt, deceased, and that the third item, the Lawton claim, so called, is a valid demand against the children of the decedent and the estate of the deceased widow, to be paid by them in proportion to the amount received by them respectively.

The claim of the defendant bank is made up of the amount remaining unpaid upon certain promissory notes, made by the testator in his lifetime, which were valid claims against his estate at the time of his death, aggregating several thousand dollars. After his death the executors made partial payments upon said claim, giving from time to time renewal notes for the amount remaining unpaid, until about the 1st of July, 1893, a little more than a year before the commencement of this action, when the last payments were made and the last renewal notes given.

Under the authorities referred to this claim was not barred by the Statute of Limitations at the time of the commencement of this

action, and was in all respects a valid claim against the estate of Samuel Oosterhoudt, deceased.

All of the foregoing claims were duly presented to the executors. They were not rejected or their genuineness in any manner controverted or denied until the commencement of this action.

When the nature and origin of the claims of the plaintiff and the defendant bank are understood, their exact status at the time of the commencement of this action ascertained, it becomes apparent that upon every principle of justice and equity they should be paid out of the property left by Samuel Oosterhoudt, deceased, now in possession of the legatees and devisees under his will, which property, at the testator's death, was sufficient to discharge every obligation existing against him, and, in addition, to liberally provide for those dependent upon him, the defendant legatees and devisees.

The entire property, both real and personal, was taken possession of by the executors, was in effect managed by them, not only as executors but also as agents for all the parties interested except the creditors. With the knowledge and consent of all a large amount of the personal property and a considerable portion of the realty was turned over to the legatees, instead of being devoted to the payment of debts, and money was borrowed from the plaintiff and others to pay those debts which were most pressing, and the claims of the defendant bank and of other creditors were procured to be carried along, all for the purpose of avoiding the necessity of then disposing of such of the property of the estate as it was thought to be most advantageous for the legatees and devisees to retain. Clearly, they should not be permitted to reap the advantage of such a course of dealing, all of which was with their full knowledge and consent, at the expense of those from whom they borrowed money, and those who extended the time of payment of their demands, in order that the plan of the executors and those whom they represented might be carried out.

From an examination of the several sections (1837 to 1860, inclusive) of the Code of Civil Procedure to which attention has been called by the learned counsel for the respondent Mary A. Allen, we are of the opinion that they furnish ample authority for the maintenance of this action, and that a court of equity may determine the rights of all the parties, and grant to each the relief to

which he is equitably entitled. Whether such relief may be granted by a court of equity, independent of the statutory provisions, as was held in *Colgan* v. *Dunne* (50 Hun, 443), it is unnecessary to determine.

The learned referee found, as a conclusion of law, that the claims of the plaintiff and of the defendant bank were all barred by the Statute of Limitations, and for that reason alone dismissed the complaint upon the merits, and determined that the claim of the defendant bank was of no force or effect, and judgment was entered accordingly. No other question of law was passed upon or decided by the referee.

Having concluded that at least some of the items of plaintiff's claim and the claim of the defendant bank were not, as against the estate, barred by the Statute of Limitations at the time of the commencement of this action, the judgment must be reversed and a new trial ordered. We do not deem it necessary at this time to attempt to define the exact rights of the respective parties, which will depend upon the evidence which may be adduced upon such new trial, and we, therefore, have refrained from expressing any opinion as to the correctness of the findings of fact made by the learned referee, or whether such findings or any of them are against the weight of the evidence. We simply hold that upon the conceded facts certain of the items constituting plaintiff's claim and the claim of the defendant bank were not barred by the Statute of Limitations, at the time of the commencement of this action, and that in this action the rights of all the parties may be determined, the rights of each depending upon the evidence which may be adduced.

It follows that the judgment should be reversed and a new trial granted before another referee, with a separate bill of costs to each of the appellants to abide event.

SPRING, WILLIAMS, HISCOCK and DAVY, JJ., concurred.

Judgment reversed and new trial ordered before another referee, with separate bill of costs of this appeal to each appellant to abide event.

NOTE.— The rest of the cases of this term will be found in the next volume, 73 App. Div.— [REP.