## BLALACK & SON v. SAN ANTONIO CATTLE LOAN CO. et al. (No. 605–4094.)

(Commission of Appeals of Texas, Section A. Jan. 14, 1925.)

**1. Chattel mortgages ⊂⟩138(1) — Chattel mortgagee held not to impliedly agree to pay for pasturage.**

One taking mortgage on cattle, in ignorance of owner's unrecorded contract of pasturage, did not impliedly agree to pay such pasturage.

**2. Chattel mortgages ⊂⟩138·(1) — Pasturage lien without consent of mortgagee held inferior to mortgage.**

A lien on cattle for pasturage, under Rev. St. art. 5664, obtained without authorization or consent of mortgagee, is inferior to a prior valid recorded mortgage.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Blalack & Son against the San Antonio Cattle Loan Company and others. Judgment for plaintiff was affirmed in part, and reversed and rendered in part, by the Court of Civil Appeals (256 S. W. 974), and plaintiff brings error. Affirmed.

G. B. Fenley, of Uvalde, and W. B. Teagarden and B. W. Teagarden, both of San Antonio, for plaintiff in error.

Terrell, Davis, Huff & McMillan, of San Antonio, for defendants in error.

CHAPMAN, J. Prior to July 1, 1920, the Evans-Snider-Buel Company and the Central Trust Company held first liens on several hundred head of cattle of Lichte & Thompson to secure an indebtedness of about $60,000. The mortgages providing for these liens were properly recorded. On July 1, 1920, Lichte & Thompson made a contract to pasture the cattle above mentioned for a period of 12 months. The 12 months' period ended July 21, 1921. This contract was not recorded. On July 21, 1920, Lichte & Thompson executed a mortgage to the San Antonio Cattle Loan Company in which it was provided that said loan company should have a first lien on these same cattle. The San Antonio Cattle Loan Company, out of the money loaned by them to Lichte & Thompson and secured by the mortgage last mentioned, paid off the indebtedness due by Lichte & Thompson to Evans-Snider-Buel Company and the Central Trust Company, and obtained releases of the liens of said parties and placed same of record August 12, 1920. After the end of the 12 months' period, the Cattle Loan Company and Central Trust Company, with Ætna Casualty Insurance Company as surety, executed to Blalack & Son a bond conditioned that the Cattle Loan Company would pay for the 12 months' pasturage already mentioned if it should be determined

that the lien of Blalack & Son was superior to the lien of the Cattle Loan Company. Suit was brought against all parties to the bond, and against Lichte & Thompson for the 12 months' pasturage. As to the negotiation of the loan by the San Antonio Cattle Loan Company to Lichte & Thompson, Mark L. Brown, secretary of the Loan Company, testified as follows:

"Regarding the first connection I had with the loan made by the San Antonio Cattle Loan Company to Messrs. Lichte & Thompson upon these cattle, which were placed in the Blalack pastures, I will say along about June, 1920, Mr. Lichte came to me and said that he and Mr. Thompson were desirous of getting a loan on certain steers that the Central Trust Company and the Evans-Snider-Buel Company were then carrying mortgages on, and that he wanted us to take over these cattle and mortgages and advance them about $61,000, and pay the loan for them. Mr. Lichte said both institutions, the Central Trust Company and the Evans-Snider-Buel Company, had first liens on the respective cattle described in their mortgages. He said he would give us a first lien on the cattle— that we would take over the lien and stand in the shoes of the Central Trust Company and the Evans-Snider-Buel people. He asked us to advance them about $61,000. The proposition originally came from Mr. Lichte."

Herman Lichte, of the firm of Lichte & Thompson, testified as follows:

"With reference to how I happened to get this loan from the San Antonio Cattle Loan Company, I will state I discussed with Mr. Browne—told him I would like to consolidate our business and relieve the Central Trust Company and the Evans-Snider-Buel Company on the two loans, and asked him about the San Antonio Cattle Loan Company taking it up. I told him the Evans-Snider-Buel people and the Central Trust Company had a first mortgage on these cattle, and I just wanted them to take up that mortgage and carry it on, and told him I would give him the cattle as security for this loan, and told him we would give him a first mortgage on the cattle. We were going to pay the Evans-Snider-Buel Company and the Central Trust Company mortgages off with the money I got from—I intended for the San Antonio Cattle Loan Company to pay these mortgages off with the proceeds of the loan they made on the cattle. We were simply going to shift the loan from Evans-Snider-Buel Company and the Central Trust Company, to the San Antonio Cattle Loan Company."

Mr. G. B. Fenley, one of the attorneys for Blalack & Son, testified that about July 15, 1921, he went to see Mr. King, who was president of the San Antonio Cattle Loan Company, with reference to trying to collect this pasturage from the Cattle Loan Company, and that during the conversation Mr. King made use of this language: "Oh, well," Mr. King said, "you know how that was; at the time this contract was made everything was rosy and bright, cattle were high, and everybody

was prosperous, and such a thing as subrogation was not thought of."

There was nothing in the record to show that Mr. King carried on any of the negotiations with Lichte & Thompson with reference to the loan, but that all the action he took with reference to it was to approve the loan upon its being presented to him by Mr. Brown. There was nothing in writing referring in terms to the matter of subrogation. The case was tried before the court without a jury, and the trial court found that the lien of Blalack & Son was superior to the lien of the San Antonio Cattle Loan Company, holding that the Loan Company was not subrogated to the rights of the original mortgagees, and rendered judgment against Lichte & Thompson, San Antonio Cattle Loan Company, Central Trust Company, and Ætna Casualty Insurance Company, for the full amount of the 12 months' pasturage. The Court of Civil Appeals at San Antonio, 256 S. W. 974, held that the San Antonio Cattle Loan Company was subrogated to the rights of the original mortgagees, and held that the lien of the Cattle Loan Company was superior to the lien of Blalack & Son, and reversed the case as to all defendants except Lichte & Thompson.

The first question for determination is whether under the facts above stated the San Antonio Cattle Loan Company was subrogated to the rights of the original lienholders. We agree with the opinion of the Court of Civil Appeals on this issue, and Justice Fly, in writing the opinion for that court, so thoroughly and correctly discussed the question of subrogation applicable to this case that we can see no good reason for our writing on this question.

The Court of Civil Appeals held that there is no evidence tending to show that defendant in error Cattle Loan Company ever agreed to pay the pasturage sued for, and in this we think they are correct. In the absence of any agreement, either express or implied, on the part of the Loan Company to pay the pasturage, there is only left the sole question of the priority of the liens of the mortgagee Loan Company, and of Blalack & Son, who pastured the cattle. Plaintiffs in error claim that under the holding of the Beaumont Court of Civil Appeals in Bank v. De Blanc, 247 S. W. 897, Blalack & Son have an equitable lien for the pasturage of the cattle superior to the lien of the Loan Company. We are unable to ascertain with certainty whether the holding in the last-named case that the lien of the pasture owner was superior to that of the mortgagee is based on an implied promise of the mortgagee to pay the pasturage, or upon an equitable lien in favor of the pasture owner.

[1, 2] Without passing upon the question of the effect of an implied promise on the part of the mortgagee to pay the pasturage, there are no facts in this case upon which such implied promise on the part of the mortgagee could be based. At the time the pasturage contract was made the Evans-Snider-Buel Company mortgage was of record, and provided that the mortgagor should take care of the cattle at his own expense, and the San Antonio Cattle Loan Company mortgage, later placed of record, contained a like provision. The pasturage contract was not placed of record and there is nothing in the record to show that mortgagee Loan Company knew of the provisions of this contract. It could not be held that the Loan Company impliedly promised to pay the pasturage for a year as provided in the written contract when it did not know that such contract existed. If the holding in the De Blanc Case be based on the theory that the pasture owners' lien was superior to that of the mortgagee as a matter of equity, then we cannot agree with such holding.

In Masterson v. Pelz (Tex. Civ. App.) 86 S. W. 56 (writ of error denied), the question was whether the lien of a livery stable keeper for care of a horse was superior to a prior recorded lien. The court held in favor of the prior recorded lien, and used this language in discussing the question:

"Following the express provisions of that statute, if for no other reason, it must be held that the lien of Eison for board, care, and attention of the property after the execution of the mortgage could not have preference over the mortgage lien given by Pelz to appellant, of which Eison had a constructive notice. The possession of the property remained in Pelz, and he had the absolute right to place it anywhere he saw proper, and have it cared for by any one, and appellant had no authority to interfere with him in controlling the property. He did not attempt to interfere with the management of the property, and his knowledge that the horses were being kept in a livery stable did not have the effect of giving the proprietor a preference lien on the property over the mortgage lien."

In American Type Founders' Co. v. Nichols, 110 Tex. 4, 214 S. W. 301, Judge Greenwood, speaking for the Supreme Court, made this statement:

"Article 5664 of the Revised Statutes gives 'a special lien' on certain animals and vehicles for charges against same in favor of proprietors, owners, and lessees of livery stables and pastures. Such special liens attach, however, subject to subsisting mortgages. Masterson v. Pelz (Civ. App.) 86 S. W. 56."

In Sullivan v. Clifton, 55 N. J. Law, 324, 26 A. 964, 20 L. R. A. 719, 39 Am. St. Rep. 652, the same question was before the court as that in the Pelz Case, supra, and we find the following statement:

"A liveryman is not bound to receive a horse on keep. In this case he had notice of the mortgage, and could have declined to take the horse, unless he was willing that his lien under the

statute should be subject to the mortgage. The lien of the liveryman as well as that of the mortgage resting exclusively upon statutory provisions, the one having no higher claim to be enforced than the other, the lien of the former, being subsequent in time, and taken with full notice of the right of the latter, must, upon principle, be subject to it."

In National Bank of Commerce v. Jones, 18 Okl. 555, 91 P. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041, at the footnotes we find this language:

"As is said in the foregoing case, the weight of authority is to the effect that a lien for feeding and caring for domestic animals is not superior to the lien created by a prior valid recorded mortgage. This doctrine is upheld by a long line of authorities, and is so well established that it is unnecessary to set the cases out at length."

Following this is a long list of citations to which we here refer, and we think this statement is the law applicable to this case, as we understand it, and recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.