In the Matter of the Judicial Settlement of the Account of EARL W. SCRIPTER, as Executor, etc., of ELBERT O. FORBES, Deceased, Respondent.

FORT COVINGTON BANKING COMPANY and Another, Appellants.

Third Department, May 26, 1925.

Executors and administrators — obligations created by executor — executor borrowed money, though unnecessarily, for administration purposes — bank loaning money is subrogated to rights of executor — amount borrowed should be allowed to bank making loan — executor's refusal to pay was unjustified — allowance to executor who acted as attorney reduced.

A bank which loans money to an executor, which money is legitimately used in the administration of the estate, though unnecessarily borrowed since the liquid assets were sufficient to meet all requirements, may, on the refusal of the executor to pay the loan, although the estate had money with which to make the payment, be subrogated to the rights of the executor against the estate and will be allowed the amount loaned to the executor and will not be left to its remedy against the executor personally.

Since the borrowing of the money was unnecessary, and since the refusal of the executor to pay the loan was unjustified and resulted in the expense of the present proceeding, the allowance of $1,100 made to the executor who acted as his own attorney is reduced by the Appellate Division to $500.

HINMAN, J., and COCHRANE, P. J., dissent, in part, with opinion.

APPEAL by Fort Covington Banking Company from a decree of the Surrogate's Court of the county of Franklin, entered in the office of said Surrogate's Court on the 3d day of July, 1924, in so far as it disallows the claim of said appellant.

Appeal by Dora Forbes Brushey from said decree in so far as it allows the executor $1,100 as attorney's fees for services for five and one-half years' management of said estate and legal services in connection with same, and $26 disbursements.

*Allen & McClary* [*William L. Allen* of counsel], for the appellant Fort Covington Banking Company.

*George J. Moore,* for the appellant Dora Forbes Brushey.

*Earl W. Scripter*, respondent in person.

*Bryant & Lawrence* [*E. C. Lawrence* of counsel], for the American Surety Company.

VAN KIRK, J.:

The Fort Covington Banking Company was a partnership. The deceased was a partner. Mr. Scripter is his executor. The banking firm was prosperous; the estate is of considerable size. The widow, now Mrs. Brushey, is the residuary and principal legatee. In administering the affairs of the estate ready funds were not always on hand. Naturally, if funds were needed for the estate, application was made to the firm of which the deceased had been a member; moneys were so loaned upon notes signed by Mr. Scripter as executor, with full knowledge and consent of the widow. With one of these notes a $1,000 bond belonging to the estate was pledged as collateral. The proceeds of these notes were used, under the terms of the will, for a monument and for advancements to the widow. In his account the executor asked, and by the decree has been allowed, credit to himself for these moneys so borrowed and used. The banking firm asks that it be subrogated to the rights of the executor as to this sum or credit.

The banking firm cannot enforce its claim against the estate directly, but it invokes relief in equity under the principles stated in 24 Corpus Juris, 71: " Subrogation of Contracting Party. While a person who lends or advances money to an executor or administrator upon a promise by note or other contract acquires no right at law or in equity against the estate, unless the money has in fact been applied to pay debts or otherwise to benefit the estate, he will in such case be permitted to take the representative's place and be subrogated to his right to reimbursement from the estate." We think it should have this relief. (*Hamlin* v. *Smith*, 72 App. Div. 601.) It is plain that the bank, the executor and the residuary legatee, who alone under the will have an interest in this question, understood these moneys were borrowed solely for proper purposes in the administration of the estate. The surrogate has held they were used in the proper administration of, and for the benefit of, the estate, else he could not have allowed· the executor credit therefor to be paid by the estate. The part of the decree making this allowance is not appealed from and is final. (*Ball* v. *Miller*, 17 How. Pr. 300.) There is no dispute as to this allowance between the bank and the estate; the estate must pay it. What are the merits between the bank and the executor? The moneys borrowed on these notes were not used by· or for the executor personally. He was the conduit simply from the bank to the estate. He had

not one dollar less after he had disbursed this money than he had the moment before; he was not in the least " out of pocket." But he now has a credit, is unjustly enriched, in his account for that which never was in fact his and which never cost him one penny; the bank alone is the loser. A sense of justice revolts against this condition. If this money had been used to pay valid debts of the estate, *Hamlin* v. *Smith* (*supra*) would be an exact authority. There can be no real distinction here in principle from that holding. It is said that in this case the money was used not to pay debts of the deceased, but the answer is it was used, in pursuance of the provisions of the will, for the benefit of the estate as much as is the payment of a debt; the moneys were needed in its proper administration. The dispute in this respect is solely between the executor and the bank. The credit is not in fact a reimbursement to him; it is rather an unjustified present. Why make him this present; why be liberal to him with another's money?

The notes have been long due; they have not been paid; the executor says he owes them; since the decree was made he has had the funds with which to pay; evidently for some reason he does not intend to pay them. There is no explanation why he has not paid them or why payment has not been forced from him; the one conclusion is that collection from him cannot be forced; that he is insolvent. In *First National Bank of Freehold* v. *Thompson* (61 N. J. Eq. 188) it was held that a person who had loaned money to an administrator to pay debts of the estate was entitled upon the insolvency of the administrator to be subrogated to his claim against the estate for reimbursement.

In the management of this estate Mr. Scripter acted not only as executor but as its attorney and has been allowed compensation for his services as such. Every indebtedness and obligation of the estate could have been readily provided for from the liquid assets of the estate. No explanation is made why moneys were borrowed from the bank, except that in his discretion the executor concluded so to do. And the fact stands that, if he had paid the notes from the amount for which he is allowed credit, the cost of this contest to the estate would have been avoided. The court should not protect one of its officers in such an unjust gain as is here disclosed. The allowance to Mr. Scripter for services should be reduced to $500.

We have not considered the position of the insurance company which is obligated on the executor's bond. It can be heard in case an action is later brought against it.

For the above reasons the bank should be subrogated to the executor's right to reimbursement from the estate as to the afore-

said items of credit allowed in his account; and the allowance for services reduced as above stated. ·

All concur, except HINMAN, J., dissenting in part, with an opinion, in which COCHRANE, P. J., concurs.

HINMAN, J. (dissenting in part):

This is an appeal from a decree of the surrogate of Franklin county rendered upon the final judicial settlement of the account of the executor, entered on the 3d day of July, 1924. The executor's account was thereby judicially settled and allowed as filed. No objection was made to the account except that the Fort Covington Banking Company filed a claim against the estate for $1,691.95 and interest, which was objected to by the widow of the deceased, who was the sole legatee. The said claim was rejected by the executor. A hearing was had before the surrogate on said claim which was based upon four promissory notes which the executor had signed as executor and had delivered to the claimant. The proof was that all the proceeds of said notes went to the benefit of the estate. The widow was the sole legatee and the proceeds of the notes were either paid to her or for her benefit as advancements with the exception of one note, the proceeds of which were used to pay for a monument for the deceased, which the will directed the executor to provide for. In the account of the executor he was credited with these payments made for the benefit of the estate from the proceeds of these notes. The claimant bank objected to such credit items in the account to the extent of the amount due to the claimant on the notes in question, claiming the right to be subrogated to the right of the executor to be reimbursed for the moneys so advanced by the bank to and for the benefit of the estate. One of the notes was for $800 upon which there had been paid by check of the executor the sum of $473.05. At the time of the giving of this note, the executor had pledged to the bank, as collateral security for said note, a bond of the government of Newfoundland for $1,000 which belonged to the estate. The surrogate held that the executor had no authority to issue notes for borrowed money and bind the estate and after reviewing all of the proofs concluded as a matter of fact that the acts and the conduct of the bank officers and the executor showed that neither of the parties regarded these notes as obligations of the estate but the personal obligations of the executor. · The surrogate also found that the executor had no authority to pledge as collateral security the Newfoundland bond for $1,000, the property of the estate, and that the banking company, having knowledge that the bond belonged to said estate, had no right to accept or retain the same as collateral to the personal

note of the executor. The surrogate disallowed the claim of the bank on the four notes and directed that the bond be surrendered by the claimant to the representatives of the estate. In approving the accounts of the executor as filed, the surrogate allowed him as credits the payments made by him for the benefit of the estate from the proceeds of these notes and overruled the objections to the allowance of such credits. Presumably suitable allowance has thus been made to the executor to permit him to meet his personal obligation upon these notes out of funds of the estate reserved in his hands to take the place of advancements made for the benefit of the estate when he used the proceeds of the notes for that purpose. The Fort Covington Banking Company is one of the appellants here, claiming that the bank is entitled to be subrogated to the right of the executor to be reimbursed.

The executor bound himself and not the estate when he signed the notes in question. This rule is well settled even where the executor makes such an executory contract in the interest of the estate and for its benefit. In such a case the notes, though signed by him as executor, are held to be his personal contracts and do not bind the estate, notwithstanding the executor could have paid the same from the assets of the estate and been allowed for the expenditure in the settlement of his accounts. " The principle is, that an executor may disburse and use the funds of the estate for purposes authorized by law, but may not bind the estate by an executory contract, and thus create a liability not founded upon a contract or obligation of the testator." (*Austin* v. *Munro*, 47 N. Y. 360, 366; *Schmittler* v. *Simon*, 101 id. 554.) Upon this principle he could pay the notes, as he did in part, out of the funds of the estate and he could pledge the bond of the estate as collateral security on one of the notes to obtain the loan for an estate purpose. The title of the executor is absolute for the purposes of administration and he may sell, mortgage or pledge the personal property of the estate for the purposes of the estate. The pledgee dealing with him in good faith obtains good title. The general presumption is that the purposes of the estate may require such a use of the property of the estate in the course of a prudent administration. (*Smith* v. *Second National Bank*, 169 N. Y. 467; *Matter of Heinze*, 224 id. 1.) In this case the executor did not misapply the proceeds of the loan. The estate purpose was the advancement to the sole legatee of a portion of her legacy. It is often more advantageous to pledge for a loan rather than sell good securities paying an adequate return. There was nothing in the transaction to impugn the good faith of the claimant in taking the pledge and making the loan. Indeed, it is questionable whether the surrogate had juris-

diction to determine the adverse claims to the right of possession of this pledged bond. (*Matter of Heinze, supra.*) In view of the principle involved, as shown by the authorities, the claimant may hold the bond in question to secure the loan on the $800 note even though the amounts that are due on all of the notes are a charge against the executor personally and not against the estate. The executor had a right to reject the claim as against the estate and take personal credit for the expenditures made from the proceeds raised upon his personal notes. Having done so, it was proper for the surrogate to disallow the claim against the estate on the notes but the bond should remain with the claimant as collateral security for the payment of the balance due on the $800 note. The executor must produce the bond by the payment of this note or be charged with the bond in his account. The decree should be modified accordingly.

I dissent from the holding that the claimant is entitled to subrogation and vote for modification of the decree in accordance with the above and also as to the reduction of the allowance to the executor for legal services.

COCHRANE, P. J., concurs.

Decree is modified by directing that the sum allowed the executor for credits in the amount of $1,691.95 be paid to the Fort Covington Banking Company; and is further modified by reducing the compensation allowed to the executor, as attorney, to the sum of $500, and as so modified decree is affirmed, without costs.