### SHERMAN v. EL PASO NAT. BANK et al.

No. 3456.

Court of Civil Appeals of Texas. El Paso.

Dec. 17, 1936.

Rehearing Denied Jan. 7, 1937.

404

Gowan Jones, of El Paso, for appellant.

Jones, Hardie, Grambling & Howell, of El Paso, for appellees.

This is a suit by the El Paso National Bank, filed February 21, 1935, against Charles E. Leavell, administrator, de bonis non, of the estate of John Mulligan, Sr., deceased, Norma Mulligan, the surviving wife of the deceased, and the surviving children and heirs at law of the deceased, John Mulligan, Jr., Edward, Samuel, and Dorothy Mulligan, and others not necessary to mention.

On trial without a jury, the court, on February 26, 1936, rendered judgment in favor of the bank, decreeing the bank had a valid fourth-class claim against the said estate and administrator in the sum of $50,854.68, with interest at the rate of 6 per cent. per annum from February 1, 1936, and ordering the same be allowed and approved as a fourth-class claim to be paid in due course of administration after the claim of the Maricopa Fuel & Feed Company had been paid in full; denying a recovery by plaintiff against Norma Mulligan and John Mulligan, Jr., personally, upon the notes hereinafter described and decreeing the plaintiff have no foreclosure of lien against any of the defendants. The lien referred to is a deed of trust upon certain real estate in the city of El Paso known as the Mulligan warehouse property.

It was further ordered that plaintiff's suit against the Mulligans and Gowan Jones for adjudication of title to said warehouse property, and for removal of cloud on the title thereto, be dismissed without prejudice.

Other features of the judgment are unimportant in this appeal and need not be stated.

From this judgment the administrator alone appealed. Leavell later died and was succeeded as administrator by Ray E. Sherman.

The material facts out of which this litigation arose are as follows:

John Mulligan, Sr., died intestate, April 24, 1930. On July 8, 1930, John Mulligan, Jr., his son, and Norma Mulligan, his surviving wife, were appointed administrators of his estate. In 1934 Norma and John Mulligan resigned; their resignations were accepted and Leavell appointed. The appraised value of the estate amounted to about $205,000. The debts of the estate amounted to about $60,000. Of this latter amount $22,700 was represented by two past-due notes of the deceased in favor of the El Paso National Bank; $3,436 by notes in favor of First National Bank of El Paso, maturing in about 30 days, and $25,000 by notes in favor of the First Mortgage Company of El Paso, Tex., maturing December 9, 1930. The Mortgage Company was threatening to declare its notes due on account of default in payment of interest, but was willing to extend the notes upon the payment of $10,000 on the principal. The administrators and heirs of the deceased requested the plaintiff to lend the estate funds with which to pay most of the past-due obligations of the estate for the purpose of preventing the accrual of attorney's fees on the notes. The administrators accordingly borrowed $45,000 from the bank upon notes signed by the administrators and secured by deed of trust on the Mulligan warehouse property. The loan was negotiated at the request and with the approval of all of the heirs. To evidence the loan, the administrators in their representative capacity executed notes in the principal sum of $45,000. The deed of trust was executed by the administrators in their representative capacities. The surviving wife and all of the children in their personal capacities also joined in the execution of the deed of trust. The notes and deed of trust are dated August 4, 1930. Prior to borrowing the money and the execution of the notes and deed of trust, the administrators filed their petition in the probate court seeking authority so to do. The first application set forth the necessity for raising $40,000 by loan in order to prevent acceleration of maturity of notes owing by the estate and the accrual of attorney's fees; that it was impossible to sell any of the property in time to pay the notes before attorney's fees accrued, also that penalties would accrue on taxes

assessed against the properties of the estate.

August 1, 1930, the probate court entered an order authorizing and directing the administrators to borrow $40,000 as requested in the petition, to be secured by deed of trust on the warehouse property and authorizing the execution of the notes and deed of trust lien.

On August 4, 1930, the administrators filed a petition in the probate court for authority to increase the loan and lien to $45,000, setting forth the necessity for such increase. On the same date the probate court entered an order granting such petition and directing and authorizing the administrators to make said loan and execute notes for said $45,000, secured by lien on the real estate above mentioned. Said notes and lien were excuted by the administrators dated August 4, 1930, as heretofore stated.

On August 6, 1930, the proceeds of the loan were deposited to the credit of the administrators in the El Paso National Bank. At the same time a check was drawn by the administrators in favor of said bank for $22,789.66, to pay the claim of the bank on the two notes of John Mulligan heretofore mentioned, the principal and the interest of which amounted to $20,424.40, and the balance represented by money advanced by the bank to pay funeral expenses and other debts of the estate. A claim for this sum of $22,789.66 had been duly presented to the administrators and allowed by them on August 6, 1930, and approved by the probate court September 30, 1930, as a fourth-class claim.

On August 7, 1930, a check for $32.50 payable to the Abstract Company for bringing down abstract on Mulligan property was paid.

On August 8, 1930, the following checks were paid out of said account: $100 for bank's attorneys in connection with loan; $1,340 commission to bank for making loan; $42.90 to a building and loan company to cover payment on loan covering property belonging to the estate; $160 for premiums on administrators' bond; $10,-120.88 on notes held by First Mortgage Company; $2768 on notes held by First National Bank.

On August 9, 1930, there was a withdrawal of $250 to cover the attorney's fee of Tom Lea for representing the estate.

The claim of the First Mortgage Company of El Paso, Tex., for the above $10,-120.88 was allowed by the administrators August 7, 1930, and approved by the court September 30, 1930.

The claim of the First National Bank of El Paso, Tex., for the above $2,768 is shown as allowed by administrators August 7, 1930, and approved by the court September 30, 1930.

All of the deposits in, and withdrawals from, the above bank account were listed in the final account of Norma Mulligan, and approved by the probate court.

The annual report of John Mulligan, Jr., and the order accepting his resignation and stating his account are to the same effect.

In these reports, the proceeds of the notes aggregating $45,000 in principal amount were treated as funds of the estate, to be accounted for by the administrators, and the notes and deed of trust were treated and recognized as valid obligations of the estate. In these orders of the probate court, the same position was taken and confirmed.

The administrators paid the semiannual interest on the $45,000 up to August 5, 1931. The administrators defaulted in the payment of the state and county taxes for 1931, and they were paid by the bank on February 5, 1932, by cashier's check in the amount of $1,239. The administrators defaulted in the payment of the city taxes for 1931, and they were paid by the bank on May 20, 1932, by cashier's check in the amount of $2,556.08. They defaulted on county and state taxes for 1932, which were paid by the bank January 30, 1933, in the amount of $1,064. They defaulted on city taxes for 1932, which were paid by the bank February 28, 1933, in the amount of $2,243.93. They defaulted on county and state 1933 taxes, which were paid by the bank January 30, 1934, in the amount of $1,239. The deed of trust provides that if default should be made in the payment of taxes, the holder of the notes should have the right to pay the taxes and be reimbursed by the signers of the deed of trust, and that if default should be made in paying the principal or interest on the notes, any holder of any of the notes should have the right to collect and receive the rents from the Mulligan warehouse property, covered by the deed of trust lien.

Because of defaults in the payment of interest and taxes the El Paso National Bank, with the consent of the administrators, began the collection of the rents on the warehouse property on August 25, 1932.

The probate court had theretofore joined with the administrators in allowing and approving a claim by the bank on the first four $1,000 notes, interest, and attorney's fees, and for $1,239 paid by the bank as taxes on the Mulligan warehouse property. Said claim was approved and allowed as a secured claim on May 5, 1932.

Upon application of the bank, the probate court, on November 28, 1933, entered an order authorizing the bank to take possession of the Mulligan warehouse property, attend to the renting of it, and apply the proceeds to the payment of taxes, insurance, necessary repairs and then to apply any balance on the claim of the bank which had theretofore been allowed, and to apply any balance on the other notes of the series aggregating $45,000.

The bank, from August 5, 1932, to October 20, 1933, received as rents on the Mulligan warehouse property $3,825.98. After the bank was placed in control of the property, it collected rents aggregating $9,400. The bank, in addition to applying rents on taxes, paid insurance premiums, which totaled $249.27.

In the court's findings of fact and conclusions of law, the court charged the bank with all rents received, with interest at 6 per cent. from dates of receipt, and credited these amounts against the taxes and insurance which had been paid out by the bank.

On February 6, 1933, the probate court, upon application of El Paso National Bank as a lienholder, ordered the Mulligan warehouse property sold, subject to the unmatured notes on said property, aggregating $41,000. On February 17, 1933, the sale was directed to be held at public auction on April 4, 1933.

On June 30, 1933, said property was again ordered sold, and it was again directed that the sale be held at public auction.

On January 3, 1934, the probate court entered an order refusing to confirm a sale to El Paso National Bank, solely because of the inadequacy of the price. Said order, however, recognized the right of the bank to remain in possession of the property.

The claim upon the notes and deed of trust was disallowed by the administrator, Leavell, February 1, 1935. No one interested in the Mulligan estate had theretofore questioned the validity of the appellant's claim on the notes and deed of trust.

On April 5, 1935, the probate court entered an order directing the bank to surrender possession and control of the warehouse property to the administrator Leavell, which was done. The only claims other than the claim sued on by the plaintiff, which have been filed allowed, and approved against the estate and which are still unpaid, are in favor of various parties and amount to between fifteen and twenty thousand dollars, but all of said claims have been acquired by the El Paso National Bank except the claim of the Maricopa Fuel & Feed Company for $1,322.13. The judgment of the court accords precedence to the Maricopa claim. All of the valid claims against the estate have been paid except those owned by the bank and the Maricopa Fuel & Feed Company. No one is adversely affected by the judgment of the lower court allowing and establishing the claim in favor of the bank except the Mulligan heirs and persons claiming under them. There are other facts reflected by the record which are unimportant under the view which we have of the proper disposition to be made of the appeal.

The findings and conclusions of the trial court show the court held the notes and deed of trust were void and for such reason denied any recovery thereon but that the bank was entitled to recover the money advanced, with legal interest, under the doctrine of subrogation. The basis for the amount awarded by the judgment is shown by an excerpt from the court's findings and conclusions, which reads:

"The net amount received by the Administrators of the Estate of John Mulligan, Sr., from the proceeds of the loan made by El Paso National Bank, and used for the benefit of said Estate, was $43,525.98, which was appropriated to the use of said Estate by said Administrators on August 6, 1930, and said sum having been advanced by said Bank, and said Admin-

istrators not having heretofore reimbursed said Bank, and not having claimed their right to be reimbursed by said Estate in their final accounts with said Estate, said El Paso National Bank is, by subrogation, now entitled to reimbursement from said Estate in the sum of $43,525.98, with 6% interest on said amount from August 6, 1930; said El Paso National Bank is also entitled to be reimbursed by said Estate for the following sums paid as taxes, on the following dates:

| | |
|---|---|
| February 6, 1932 | $1239.00 |
| May 20, 1932 | 2556.08 |
| January 31, 1933 | 1064.00 |
| February 28, 1933 | 2243.93 |
| January 30, 1934 | 1239.00 |

and is entitled to interest at 6% per annum on said sums from their respective dates of payment. El Paso National Bank is also entitled to receive from said estate reimbursement for fire insurance premiums paid on the following dates in the following amounts:

| | |
|---|---|
| November 8, 1933 | $126.60 |
| September 27, 1934 | 122.67 |

Plaintiff is chargeable for rents received from, and for its use of, Lots 11 to 14, both inclusive, Block 230 of the Campbell Addition to the City of El Paso, in El Paso County, Texas, in the total amount of $14,379.66, with interest on said sum at 6% per annum from February 1, 1936. Said Bank has heretofore received as interest from said Estate $2925.00, which should be credited against the interest due said Bank. After allowing the proper credits due the Estate of John Mulligan, Sr., as herein set forth, there is still owing to El Paso National Bank, as of February 1, 1936, the net amount of $50,854.68, with interest at 6% per annum on said amount from February 1, 1936, which is a valid fourth class claim against the Estate of John Mulligan, Sr., and same should be allowed as such, subject to the qualification that the claim of Maricopa Fuel & Feed Company, as described in the Findings of Fact, should, under the law and under the agreement made by the plaintiff in open court, have priority of payment over said claim of El Paso National Bank."

The appellant presents its appeal upon two points:

First, the bank is not entitled to be subrogated to the rights of the creditors of the Mulligan estate who were paid off out of the proceeds of the $45,000 loan.

Second, the right of the bank to subrogation, if any such right ever existed, was barred by limitation.

The bank presents cross-assignments of error to the following effect:

First. The court erred in its ruling that the $45,000 notes were not binding obligations of the estate of John Mulligan, Sr., deceased, and in refusing to render judgment for $53,973.92, the amount due upon said notes.

Second. The court erred in refusing to hold that said notes, as against the Mulligan heirs and Gowan Jones, are binding obligations of the estate.

Third. The court erred in not holding that the deed of trust did not impress a lien upon the interest of the Mulligan heirs and Jones in the warehouse property to secure the payment of said notes and erred in not foreclosing a lien upon the interests of said Mulligans and Jones in the warehouse property to secure the payment of said sum of $53,973.92.

Fourth. The court erred in failing to adjudge plaintiff, as against the Mulligans, to be the owner of the warehouse property subject to the rights of the administrator and of Jones.

This last mentioned cross-assignment is pertinent to that portion of the decree dismissing without prejudice the issue of title to the warehouse property.

We have omitted from our statement the chain of title upon which the bank sought to recover the property.

HIGGINS, Justice (after stating the case as above).

For convenience, we will first dispose of the cross-assignments of error.

The first cross-assignment presents the issue as to the validity of the notes for $45,000. An administrator has no inherent authority to borrow money for the benefit of the estate which he represents and execute notes for money so borrowed, which would constitute valid claims against such estate. There is no statute which confers any such authority upon an administrator in this state. The learned trial court correctly held the contracts evidenced by the $45,000 notes to

be null and void. 13 Tex.Jur., Decedents Estates, § 186; Simpkins' Administration of Estates (3d Ed.) § 101; 11 R.C.L., Executors and Administrators, § 176; 24 C. J., Executors and Administrators, §§ 488, 489; Croswell's Executors and Administrators, § 111; McMahan & Co. v. Harbert's Adm'rs, 35 Tex. 451, 452; Lovenskiold v. Nueces Hotel Co. (Tex.Civ.App.) 208 S.W. 759; Smithwick v. Kelly, 79 Tex. 564, 15 S.W. 486; Stevenson v. Roberts, 25 Tex.Civ.App. 577, 64 S.W. 230.

The probate court was without jurisdiction and power to confer authority upon the administrators to borrow such money and execute said notes and the orders of the probate court directing and authorizing the administrators to do so added nothing to the validity of the notes.

■ The other cross-assignments of error relate to relief which the bank sought against the individual defendants, the Mulligans and Jones, and which was by the court denied. The Mulligans and Jones are appellees here and it is well settled the bank, which is also an appellee, and which did not appeal, cannot cross-assign errors against its coappellees.

Appellees' first cross-assignment is the only one which affects the interest of the administrator. The other cross-assignments do not affect the administrator and cannot be considered. 3 Tex.Jur., Appeal and Error, § 609.

■ Passing to the consideration of appellant's propositions, it is to be remembered the doctrine of subrogation is a creature of equity and governed by equitable considerations. In this connection we quote from 25 R.C.L., Subrogation, § 2. "It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine therefore which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it. It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice demands its application, in opposition to the technical rules of law which liberate securities with the extinguishment of the original debt. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. In the administration of relief by subrogation, it will be found that the jurisdiction of equity rests largely on the prevention of frauds and on relief against mistakes."

And in Faires v. Cockerell, 88 Tex. 428, 31 S.W. 190, 194, 639, 28 L.R.A. 528, Judge Brown remarked: "Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state."

In the later case of San Antonio C. L. Co. v. Blalack & Son (Tex.Civ.App.) 256 S.W. 974, 976, Blalack & Son v. San Antonio Cattle Loan Co. (Tex.Com.App.) 267 S.W. 474, Judge Fly said: "The doctrine of subrogation has not been carried to a greater or more comprehensive extent than in the decisions of the state of Texas."

■ The record in this case shows that at the request of the administrators and the heirs of the deceased the El Paso National Bank furnished to the administrators money to be used for the purpose of paying valid claims against the estate which had been allowed by the administrators and later approved by the probate court. For such purpose the money was in fact used to the extent of $43,525.98.

"The estate has received the benefit of the money which was advanced by defendant. It ought in good conscience to repay it with legal interest." Deery v. Hamilton, 41 Iowa, 16.

When the money was advanced to the administrators by the bank some one certainly became obligated to repay the same to the bank with legal interest. As heretofore held, the estate could not be held liable therefor upon the notes. We are of the opinion the administrators, Norma and John Mulligan, Jr., became personally liable to repay the money advanced to them by the bank. If they were not liable upon the notes, they were liable in assumpsit upon an implied contract as for money had and received.

■ Said administrators are thus in the attitude of having advanced money to pay valid and approved claims against the estate. For the sums so advanced they were entitled upon their final settlement to be reimbursed by the estate. 39 Tex. Jur. Subrogation, §§ 11 and 34; 24 C.J. Executors and Administrators, § 1205;

Lewis v. Nichols, 38 Tex. 54; Lockhart v. White, 18 Tex. 102.

█ And we further hold the bank is subrogated to such right of the administrators.

See 24 C.J., Executors and Administrators, § 491, where it is said: "Subrogation of Contracting Party. While a person who lends or advances money to an executor or administrator upon a promise by note or other contract acquires no right at law or in equity against the estate, unless the money has in fact been applied to pay debts or otherwise to benefit the estate, he will in such case be permitted to take the representative's place and be subrogated to his right of reimbursement from the estate." See, also, In re Forbes' Estate, 213 App.Div. 338, 210 N.Y.S. 218; Price v. McIvre, 25 Tex. 769, 78 Am.Dec. 558; Taliaferro v. Thornton's Ex'r (Ky.) 80 S.W. 1097; Reinstein v. Smith, 65 Tex. 247; Thomas v. Provident L. & T. Co. (C.C.A.) 138 F. 348.

█ We are of the further opinion the bank was entitled to be subrogated to the claims and rights of the original creditors whose claims were paid out of the money advanced. The bank is to be regarded as the equitable assignee of the original debts and entitled to recover upon the original obligations held by the original creditors of the estate. Fox v. Kroeger, 119 Tex. 511, 35 S.W.(2d) 679, 77 A.L.R. 663.

█ With respect to this view last stated, appellant says the bank cannot be subrogated to its own claim upon the original notes held by it. As to such original claim, the bank still owns it, and it is unnecessary to rely upon any right of subrogation.

█ Appellant also asserts there can be no subrogation unless the whole debt be paid. This refers to the First Mortgage Company claim of $25,000, of which only $10,000 was paid. The First Mortgage Company notes were secured by lien upon property other than the Mulligan warehouse property. The doctrince thus invoked is for the protection of the original creditor. It cannot be invoked by the debtor, as appellant attempts to do. 39 Tex.Jur. Subrogation, § 8; 60 C.J. Subrogation, § 29.

█ We also overrule the contention the bank's right of subrogation, if any, is barred by limitation.

Limitation did not begin to run against the claim of the administrators, John and Norma Mulligan, for reimbursement until the filing of their final accounts. This suit was filed within two years thereafter.

As to the claims of the original creditors, we think the allowance by the administrators of such claims and approval by the court tolled the operation of the statute of limitations until the rejection of the bank's present claim by the administrator de bonis non, Leavell, in February, 1935.

And, as stated above, the bank is to be regarded as the equitable assignee of said claims.

Affirmed.